## COMMONWEALTH *vs.* GABRIEL CRUZ.

Essex. May 4, 1999. - August 19, 1999.

Present: WILKINS, C.J., LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Homicide. Felony-Murder Rule. Burglary. Armed Assault in a Dwelling. As-*
*sault and Battery by Means of a Dangerous Weapon. Armed Assault with*
*Intent to Murder. Practice, Criminal,* Instructions to jury, Indictment, Jury
and jurors, Verdict, Assistance of counsel, Duplicative convictions, Capital
case.

At a murder trial in which the jury returned a verdict of guilty of felony-
murder in the first degree based on both alleged underlying felonies, no
substantial likelihood of a miscarriage of justice arose from the judge's
failure to give an instruction on murder in the second degree, which in any
event was not warranted by the evidence. [184-185]

At the trial of an indictment for first degree murder on a theory of felony-
murder, the judge's instruction to the jury on involuntary manslaughter
created no substantial likelihood of a miscarriage of justice. [185-187]

At the trial of an indictment for first degree murder on a felony-murder
theory, there was no error in the judge's statement that the felony of
burglary with assault on an occupant is a crime inherently dangerous to
human life. [187-188]

At the trial of an indictment for murder in the first degree on a felony-murder
theory, with both burglary and confining for the purpose of stealing as the
underlying felonies, no substantial likelihood of a miscarriage of justice
was created by the judge's failure to define larceny when instructing on
burglary, where confining for the purpose of stealing (G. L. c. 265, § 21)
is a felony regardless of the value of the items stolen. [188]

An indictment for burglary with assault on a person, G. L. c. 265, § 14, fol-
lowing the statutory form, sufficiently alleged the felony on which the
Commonwealth predicated its felony-murder theory and, where the
defendant was fully aware of the Commonwealth's theory of the case, any
deficiency in the indictment did not create a substantial likelihood of a
miscarriage of justice. [188-189]

At the trial of indictments alleging confining or putting a person in fear for
the purpose of stealing from a building, the judge's instructions to the jury
on the elements of the crime, tracking the wording of G. L. c. 265, § 21,
were correct and created no substantial likelihood of a miscarriage of
justice. [189-190]

Where, at a murder trial, the jury convicted the defendant of all three counts
of burglary charged, and those indictments were sufficiently independent of
the murder of the victim to support the defendant's conviction of murder
on a theory of felony-murder, error, if any, in the judge's instructions with

respect to the other possible felony supporting the theory of felony-murder was not prejudicial. [190-193]

Evidence at the trial of indictments alleging armed assault in a dwelling and assault and battery by means of a dangerous weapon warranted the defendant's convictions based on the defendant's knowledge that his coventurers carried a baseball bat and a gun. [193-194]

At the trial of indictments, the judge properly left to the jury, with appropriate instructions, whether duct tape, which the evidence established the defendant knew would be used by his coventurers to bind hostages, constituted a dangerous weapon. [194-195]

A defendant convicted of murder in the first degree did not demonstrate that his counsel rendered ineffective assistance by reason of his failure to object to the judge's instructions to the jury on the issue of whether duct tape was, in the circumstances, a dangerous weapon. [195-196]

Multiple convictions of burglary were, in the circumstances, duplicative and were ordered vacated; the remaining single conviction of burglary, which was the felony forming the basis for the defendant's conviction of felony-murder, thus constituted a lesser included offense of murder and the conviction and sentence were vacated. [196-197]

INDICTMENTS found and returned in the Superior Court Department on February 22, 1995.

The cases were tried before *Margot Botsford,* J.

*John M. Thompson* (*Janet H. Pumphrey* with him) for the defendant.

*Robert J. Bender,* Assistant District Attorney (*Gerald P. Shea,* Assistant District Attorney, with him) for the Commonwealth.

LYNCH, J. On June 17, 1996, a jury convicted the defendant of murder in the first degree on a theory of felony-murder, specifying both burglary with assault on an occupant and stealing from a building by confining or putting in fear as underlying felonies. The jury also convicted the defendant of three counts of burglary with an actual assault on an occupant; one indictment charging armed assault in a dwelling entered with intent to commit a felony; four counts of stealing from a building by confining or putting in fear; one indictment charging armed robbery; four counts of assault and battery by means of a dangerous weapon; and one indictment charging armed assault with intent to murder.

The defendant appeals primarily pursuant to G. L. c. 278, § 33E, claiming a multitude of errors. Except for the burglary convictions, we affirm. Other than where noted, no objection was raised at trial concerning the arguments discussed below and, therefore, we review the unpreserved claims of error to determine whether the errors alleged created a substantial likeli-

hood of a miscarriage of justice. See, e.g., *Commonwealth* v. *Allard*, 429 Mass. 756, 759 (1999); *Commonwealth* v. *Pucillo*, 427 Mass. 108, 115 (1998).

The jury were warranted in finding the following: On the evening of September 11, 1994, three men armed with guns broke into a third-floor apartment, after bludgeoning one of the occupants, Victor Rojas (Victor), with an aluminum baseball bat. Once inside, one of the intruders bound Victor's hands and feet with telephone wire, gagged his mouth by wrapping duct tape around his head, and covered him with a sheet. Meanwhile, the other occupants, a seven year old girl (victim)[1] and her mother, were awakened, taken from their beds, and brought into the living room where they were similarly bound, gagged, and covered with a sheet. Because the duct tape covered her nose and mouth, the victim died of asphyxiation.

Two of the men descended to the first-floor apartment where they encountered Victor's elderly uncle. The two men severely beat the uncle and shot him several times before ransacking the apartment and stealing some jewelry.

Police investigation led to the arrest of the defendant and two others.[2] The defendant gave investigators a written statement in which he admitted that he had met with Jack Marcelini, Francis Sepulveda, and Luis Raul Roque-Cruz in Marcelini's apartment located on the second floor of the building where the robbery occurred. At the meeting, these men informed the defendant of their intention to burglarize the two other apartments in the building and invited him to participate as a lookout.

The defendant said that he acted as a lookout while the others, carrying an aluminum bat and the tape, proceeded to the third-floor apartment. Soon after, Marcelini summoned him back into the apartment building and sent him down to the first-floor apartment where the defendant watched as two of the others beat Victor's uncle as they demanded money from him. After leaving the first-floor apartment in search of Sepulveda, he returned to discover Marcelini with the uncle who was bleeding from several fresh gunshot wounds. Later, three of the men, including the defendant, met at a friend's house and divided jewelry taken from the apartment.

1. *Murder in the second degree.* The defendant for the first

---

[1]Although several occupants were assaulted, we refer to the murdered child as "the victim."

[2]It appears there was a fourth suspect who has not been apprehended.

time on appeal argues that the facts warranted an instruction on murder in the second degree, and the failure to give such an instruction created a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E. The defendant posits that the malice requisite for an instruction on murder in the second degree could have been predicated on a finding that the act of gagging the victim with duct tape created a plain and strong likelihood that death would follow, i.e., third prong malice. Alternatively, the defendant argues that the jury could have found that the assaults on the victim's parents, crimes not punishable by life imprisonment, were in conscious disregard for the risk to human life, and thus, would also support a jury's finding of malice sufficient to require an instruction on felony-murder in the second degree. In view of the fact that the jury found the defendant guilty of felony-murder in the first degree, predicated on both potential underlying felonies, even if the evidence warranted the giving of an instruction on murder in the second degree, the failure so to instruct did not create a substantial likelihood of a miscarriage of justice, especially since the jury were instructed that they were responsible for determining the degree of murder. We are, therefore, confident that the jury's verdicts regarding felony-murder would have been returned even if the judge had fully instructed on murder in the second degree.

The evidence did not support an instruction on felony-murder in the second degree on the proposed alternate theory that the victim was killed in the commission of an assault and battery by means of a dangerous weapon on either of her parents, who were also bound with duct tape. The defendant correctly reasons that the dangerous use of duct tape to commit an assault and battery directly on the victim cannot be the underlying offense for felony-murder. *Commonwealth* v. *Gunter*, 427 Mass. 259, 272 (1998). However, there was no evidence that would allow the inference that any assault and battery by means of a dangerous weapon on either of the victim's parents was committed with conscious disregard for the risk to human life, or that the death of the victim was a natural and probable consequence of those felonies. *Commonwealth* v. *Ortiz*, 408 Mass. 463, 466-467 (1990), and cases cited.[3]

2. *Manslaughter instruction.* The defendant also contends

---

[3]Finally, the judge submitted the murder indictment to the jury on the theory of felony-murder, with the underlying felony being either of two

that the judge's instruction on involuntary manslaughter errone-
ously tied the involuntary manslaughter instruction to the
underlying felonies in the felony-murder charge. The judge
instructed that, if the jury found that the defendant committed
one or both of the felonies, but that the Commonwealth failed
to prove that the victim's death occurred in the course of those
crimes or if they found that the defendant only committed the
felony of stealing or putting in fear, but that although death oc-
curred in the course of it, the Commonwealth failed to prove
the defendant acted with conscious disregard for the risk to hu-
man life, they should consider manslaughter. We conclude that
no substantial likelihood of a miscarriage of justice arose from
the judge's refusal to instruct on a theory that the jury ultimately
never considered.

Moreover to convict the defendant of involuntary manslaugh-
ter, the Commonwealth would have had to prove that the
defendant, either directly, or as a joint venturer, caused

> "an unintentional death (1) during the commission of
> wanton or reckless conduct, as defined in *Commonwealth
> v. Welansky*, [316 Mass. 383, 399 (1944) ('wanton or reck-
> less conduct is intentional conduct, by way either of com-
> mission or of omission where there is . . . a high degree
> of likelihood that substantial harm will result to another')],
> or (2) during the commission of a battery, under the
> principles set forth in [*Commonwealth v. Sheppard*, 404
> Mass. 774, 777 (1989) (requiring proof that battery was
> harmful and noting "[a] harmful battery occurs when the
> touching is done with such violence that harm is likely to
> result")], and other cases cited therein."

*Commonwealth v. Catalina*, 407 Mass. 779, 789 (1990). Thus, a
finding that the Commonwealth had failed to prove that the
defendant was culpable as a joint venturer on either of the
underlying felonies would eliminate the connection between
whoever applied the duct tape and the defendant's vicarious

felonies punishable by life imprisonment: burglary with an actual assault on
an occupant, G. L. c. 266, § 14; and stealing by confining or putting in fear,
G. L. c. 265, § 21. Neither felony supported a theory of murder in the second
degree, but the judge expressly instructed that deciding on the degree of
murder was the responsibility of the jury alone. The jury were not prevented
from determining the degree of murder. See *Commonwealth v. Brown*, 392
Mass. 632, 645 (1984).

participation in this act. See *Commonwealth* v. *Burrell*, 389
Mass. 804, 807-808 (1983), and cases cited. It follows then that
a conviction of involuntary manslaughter would require a jury
to conclude that the defendant had taped the victim's mouth and
nose himself.

Where there was only slim evidence that the defendant was
present on the third floor and no evidence to suggest that he
personally applied the tape, the judge's manslaughter instruction
was not erroneous and did not create a substantial likelihood of
a miscarriage of justice.

Finally, we note that, even were we to conclude that the
judge should have instructed the jury to consider manslaughter
independently of the other two charges, this would not have
helped the defendant. The jury found the defendant guilty of
felony-murder on both underlying felonies, each punishable by
life imprisonment, and the jury were obligated to return a guilty
verdict on the most serious crime charged and proved beyond a
reasonable doubt. It is therefore difficult to comprehend how
instructing the jury that they could convict the defendant of yet
another crime could have prejudiced the defendant. Had the
jury acquitted the defendant on the two underlying felony
charges, the defendant could hardly complain that he should
nonetheless be entitled to a manslaughter conviction. As we
recently stated in a similar context, "[w]here the felony-murder
rule applies, generally the defendant is not entitled to an instruc-
tion on manslaughter." *Commonwealth* v. *Selby*, 426 Mass. 168,
172 (1997), quoting *Commonwealth* v. *Evans*, 390 Mass. 144,
151 (1983).[4]

3. *Inherently dangerous felony instruction.* The defendant as-

---

[4]There is nothing to the defendant's contention that the prosecutor argued
that the defendant "participated in the assaults on the third floor." The portion
of the summation on which the defendant apparently relies for this proposition
is as follows:

"The three men that Victor Rojas saw, were: [the defendant]; his
friend, [Sepulveda]; and the big guy, Raul. That's who he saw.

"Who were the big guys?

"Marcelini is five-foot-two. They sent the front line in; that's what
happened. The commander came in the rear and took over. Then, when
Marcelini came, that's when they went downstairs. The only reason that
they were upstairs was to get that family out of the way. Then, I sug-
gest to you, they went down the back stairway, and [the defendant]
went with them. [Sepulveda] stayed upstairs. [The defendant] went

serts that the judge improperly stated that the felony of burglary with assault on an occupant is a crime that is inherently dangerous to human life. The defendant's argument ignores settled precedent. See *Commonwealth* v. *Selby, supra* (armed assault in dwelling "by its very nature . . . 'inherently dangerous to human life,' *Commonwealth* v. *Claudio*, 418 Mass. 103, 108 [1994] [armed burglary in dwelling with assault therein, under G. L. c. 266, § 14, is inherently dangerous felony and supported conviction for felony-murder"]).

4. *Omission of larceny definition.* The defendant next contends that the judge erred by failing to define larceny when she instructed the jury that larceny underlying the burglary is a felony. He argues that the judge precluded the jury from independently finding that the defendant intended (as a joint venturer) permanently to deprive the occupants of items valued at less than $250, thus rendering the underlying crime a misdemeanor. However, larceny in a building is a felony regardless of the value of the items stolen. See *Commonwealth* v. *Ronchetti*, 333 Mass. 78, 82 (1955). There was no error, therefore, and no substantial likelihood of a miscarriage of justice resulted from this instruction.

5. *Defective indictment claim.* The defendant next argues that the indictment for burglary with an assault on a person lawfully within, G. L. c. 266, § 14, failed to allege the underlying felony on which the Commonwealth relied to satisfy the specific intent requirement, and is therefore fatally defective.

We recently addressed an analogous point within the context of a felony-murder indictment with a similar omission in *Commonwealth* v. *Gunter*, 427 Mass. 259, 274 (1998). In that case the indictment on a charge of murder made no mention of three assaults on which the Commonwealth predicated its felony-murder theory. Despite the omission, in concluding that no substantial likelihood of a miscarriage of justice occurred, we stated, "the statutory form of indictment is sufficient to charge murder by whatever means it may have been committed, including by means of felony-murder." *Id.* We also suggested that a

down. [The defendant] was involved in breaking into that bedroom. He was involved. They were looking for that money. And he was involved in the destruction that you observed in those photos that you saw in this case."

separate indictment on the independent felony would help to remedy any undue prejudice to the defendant. *Id.* Here there were separate indictments on all potential underlying felony counts. Further, before trial, the defendant was fully aware of the Commonwealth's theory of the case, and therefore, any deficiency in the indictment could not have created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Cantres*, 405 Mass. 238, 241-242 (1989) (applying similar rationale to uphold judge's denial of defendant's motion for bill of particulars outlining crime on which conspiracy charge was based).

6. *"Stealing from a building" instruction.* The defendant also contends that the judge erroneously failed to define the crime of "stealing from a building" under G. L. c. 266, § 20, apparently in connection with the following instruction:

> "The crime that is defined in our statute provides . . . Whoever, with intent to commit larceny or any felony, confines, maims, injures, or wounds, or attempts to put any person in fear for the purpose of stealing from a building, bank, safe, vault, or other depository of money, bonds, or other valuables, shall, whether he succeeds or fails in the perpetration of such larceny or felony, be punished.

> "In order to prove the defendant guilty of this crime, the Commonwealth must prove, beyond a reasonable doubt, the following:

> "First, that the defendant, as a joint venturer, confined, injured, or wounded, in this instance, Victor Rojas, Delia Diaz, or [the victim], or Felix Rojas, or put that particular person in fear;

> "Second, that he did so, sharing the intent with the actual perpetrators, to commit larceny;

> "Third, that he did so for the purpose of, or again with the intent or shared the intent of stealing from a building, bank, safe, vault or other depository of money, bonds or other valuables."

The defendant apparently contends that, because the judge did not further define the phrase "stealing from a building," by

instructing the jury on the elements of a conviction under G. L. c. 266, § 20 (stealing in a building), the jury could not have founded their convictions under G. L. c. 265, § 21 (confining or putting in fear a person for the purpose of stealing), on this act.

The defendant's citation to *Commonwealth* v. *Sollivan*, 40 Mass. App. Ct. 284, 286 (1996), does not support this contention. There the Appeals Court reasoned:

> "For over 100 years, it has been held that in order to obtain a conviction for the crime of larceny in a building, 'it is not enough [for the Commonwealth] to prove that the property stolen was in a building at the time of the theft, and that the defendant was the thief. It is necessary to show also that the property was under the protection of the building, placed there for safe keeping, and not under the eye or personal care of some one in the building.' *Commonwealth* v. *Lester*, 129 Mass. 101, 103 (1880). See *Robinson* v. *Van Auken*, 190 Mass. 161, 163, 165, 167-168 (1906). See also *McDermott* v. *W.T. Grant Co.*, 313 Mass. 736, 737 (1943) (shoplifting in a store 'would [not] . . . constitute larceny in a building under [G. L.] c. 266, § 20, for the property was under the protection of the [store's] servants rather than that of the building')."

First of all, *Sollivan* involved the application of G. L. c. 266, § 20, rather than G. L. c. 265, § 21, the statute at issue here. Moreover *Sollivan* stands for the proposition that the Legislature never intended that shoplifting, a crime traditionally prosecuted under G. L. c. 266, § 30 (1), and more recently under G. L. c. 266, § 30A, be prosecuted under G. L. c. 266, § 20. *Id.* at 285-286. Here the defendant was convicted of burglary and the judge's instruction, tracking the wording of the statute, was entirely proper. See *Commonwealth* v. *Lewis*, 346 Mass. 373, 377-378 (1963), cert. denied, 376 U.S. 933 (1964); *Commonwealth* v. *Ronchetti, supra.* Accordingly, no substantial likelihood of a miscarriage of justice resulted from this instruction.

7. *Lack of specific unanimity and independence instructions.* The defendant next argues several interrelated points which require some introductory explanation. The jury convicted the defendant of felony-murder in the first degree on two distinct felonies: stealing by confining and putting in fear, G. L. c. 265,

§ 21; and burglary with assault on a person lawfully in a dwell-
ing, G. L. c. 266, § 14. The judge instructed the jury that they
could convict the defendant of the burglary charge if they
concluded that the Commonwealth had proved that the
defendant shared the specific intent to commit one of two
alternative felonies: larceny or stealing by confining or putting
in fear.

In instructing the jury as to unanimity, the judge stated:

"I am going to repeat this, but I should say this to you:
Obviously, in order to find the defendant guilty of felony-
murder, you must find that the Commonwealth has proved,
initially, that the defendant, as a joint venturer, committed
one or both of these felonies at issue, here.

"Your finding, if you do find that, must be unanimous.
All of you deliberating must agree on the particular felony
or felonies that you find the Commonwealth has proved.
You may all agree that the Commonwealth has proved
both of the felonies; you may all agree that the Com-
monwealth has proved one of the felonies; or, you may
find that the Commonwealth has failed to [have] proved
either of the felonies. The point is that, if you find that the
Commonwealth has proved one or both of the felonies, all
of you must agree."

Later, in giving curative instructions the judge stated:

"The other [than murder] verdict slips are pretty much
self-explanatory. Each of them gives you an option of
finding the defendant 'not guilty' or 'guilty' of the crime
charged.

"Your verdicts must be unanimous, whichever way it
is. There is no other option; it is 'guilty' or 'not guilty' of
the crime charged."

On the basis of these instructions, the defendant first contends
that the judge improperly declined to give instructions that the
jury's verdict had to be unanimous as to which *count* on either
or both crimes charged underlay the felony-murder conviction.
The defendant further argues that the judge's failure to instruct
the jury that the felony for a felony-murder conviction had to be

independent of the homicide compounded the prejudice arising from the failure to give the requested instruction.[5]

The argument is that one or more jurors may have convicted the defendant of felony-murder as predicated on one count of a given underlying felony indictment, while others may have based their conviction on a different count of that same underlying felony indictment. If this occurred, the defendant asserts that such a conviction would lack unanimity because there would be no way to determine whether some members of the jury improperly based the felony-murder conviction on any of the counts pertaining to the deceased victim. As to the conviction based on the underlying felony of stealing by confining or putting in fear, some or all members of the jury could have based their vote to convict on the count alleging the mistreatment of the victim. If so, the act of binding and gagging her would not be independent of the act that killed her. Alternatively, as to the burglary-based conviction, because stealing by confining or putting in fear may have been the felony, some of the jury members could have convicted the defendant of felony-murder based on the assault of binding and gagging the victim. Either way, contends the defendant, the instructions as given were prejudicial.

The judge should have provided both a unanimity instruction and, at least with regard to the felony-murder theory alleging stealing by confining or putting in fear as a prerequisite, an independence instruction. In *Commonwealth* v. *Claudio*, 418 Mass. 103 (1994), we concluded that "the elements of a breaking and entering in a residence in the night time sufficiently distinguish a violation of G. L. c. 266, § 14, from armed assault in other circumstances, so as to justify treating a violation of that statute as predicating a charge of murder in the first degree by reason of felony-murder." Thus, the judge here did not err in declining to instruct the jury that they had to find that, whichever burglary count they relied on to convict, was sufficiently independent from the homicide. Accordingly, it is of no moment that the jury may have based the burglary on the underlying felony of stealing by confining or putting in fear as applicable to the victim; the burglary would still be sufficiently independent of the murder.

---

[5]The defendant's trial counsel requested these instructions and the claims are therefore properly preserved. See *Commonwealth* v. *Morgan*, 422 Mass. 373, 377 (1996), citing *Commonwealth* v. *Biancardi*, 421 Mass. 251, 253 (1995).

Additionally, because the jury unanimously convicted the defendant of each count underlying this theory of felony-murder, this case is distinguishable from *Commonwealth* v. *Conefrey*, 420 Mass. 508 (1995), on which the defendant mistakenly relies. There we held that a requested unanimity instruction was required as to which acts gave rise to the conviction where the defendant was charged with multiple counts of rape, reasoning that "there exists the distinct [possibility] that the jury did not agree about which of the numerous incidents actually occurred. Some jurors may have convicted the defendant on the basis of one alleged incident, while others may have convicted him based upon any of the seven other incidents." *Id.* at 514. In the instant case this danger is not present because it is readily apparent that a unanimous jury concluded that the defendant committed each of the three charged acts of burglary under G. L. c. 266, § 14.

In sum, because we conclude that the defendant's conviction on the felony-murder charge based on the burglary convictions is untainted, we need not consider the alternative theory based on G. L. c. 265, § 21.

8. *The defendant's knowledge of how the duct tape would be used.* a. *Confining by stealing or putting in fear charge.* The defendant next challenges the judge's failure to instruct that the taping of victim's mouth could not be the basis for finding that the act of stealing by confining or putting in fear was done with a conscious disregard for human life, and, consequently, this charge could not underlie the felony-murder conviction.[6] We have already concluded that the defendant's conviction under G. L. c. 266, § 14, amply supports the felony-murder conviction.

b. *Armed assault in a dwelling or assault and battery by means of a dangerous weapon charges.* The defendant also argues that, because he did not know that the duct tape would be used as a dangerous weapon, the judge should have allowed his motion for a required finding of not guilty on the indictments charging armed assault in a dwelling, G. L. c. 265, § 18A, and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (*b*). Because defense counsel

---

[6]As we have already noted, the other felony, burglary with assault on an occupant is inherently dangerous to human life and, thus, the conscious disregard for human life requisite for a finding of malice is presumed. See *Commonwealth* v. *Claudio*, 418 Mass. 103, 108-109 (1994).

objected to the denial of this motion, we review to determine "whether the evidence, considered in the light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of the essential elements of the crime beyond a reasonable doubt. See *Commonwealth* v. *Woodward,* 427 Mass. 659, 682 (1998); *Commonwealth* v. *Martino,* [412 Mass. 267, 271-272 (1992)]; *Commonwealth* v. *Cordle,* 404 Mass. 733, 738-739 (1989), *S.C.,* 412 Mass. 172 (1992)." *Commonwealth* v. *Coonan,* 428 Mass. 823, 828 (1999).

The evidence, taken in the light most favorable to the Commonwealth, establishes that the defendant's coventurers entered the premises armed with a baseball bat and a pistol and assaulted the occupants, and that the defendant was aware of these weapons when he participated in the crime. Accordingly, the defendant's knowledge of how the duct tape would be used is irrelevant to the armed assault in a dwelling indictment and the judge did not err in instructing the jury accordingly.

The judge also denied the defendant's motion for a required finding of not guilty on the four counts of assault and battery by means of a dangerous weapon, pursuant to G. L. c. 265, § 15A (*b*). With respect to the counts pertaining to Victor and his uncle, there was no error because the Commonwealth relied on the baseball bat, the gun, or both as satisfying the dangerous weapon requirement.

But the judge also instructed the jury that they could find that the duct tape, as used on the victim and her mother could constitute a dangerous weapon to support convictions on these charges. In *Commonwealth* v. *Appleby,* 380 Mass. 296, 304 (1980), we stated the applicable rule that "[w]eapons which are not dangerous per se, but which may be used in a dangerous fashion, may also be 'dangerous weapons.' . . . Generally it is held to be a question for the fact finder whether the instrument was so used in a particular case."

Thus, the question becomes whether the evidence, taken in the light most favorable to the Commonwealth would permit a reasonable finder of fact to conclude beyond a reasonable doubt that (1) the defendant was aware that the duct tape would be used to bind any hostages the intruders encountered, and (2) the act of binding a hostage constitutes a dangerous use of duct tape, sufficient to view the tape as a dangerous weapon. See *id.* at 304-305; *Commonwealth* v. *Ferguson,* 365 Mass. 1, 8 (1974). With regard to the former, there was testimony indicating that

the defendant knew duct tape would be used to tape at least one of the occupants' feet, hands, and mouth.

As to the latter, "[o]f course where the neutral object is in fact used to inflict serious injury, it would clearly be a dangerous weapon." *Commonwealth* v. *Tarrant*, 367 Mass. 411, 416 n.4 (1975) (affirming conviction of armed robbery where "dangerous weapon" was German shepherd dog). While the jury could have found that the tape was not used as a dangerous weapon, they were not required to do so, and the judge did not err in letting the jury decide this question of fact. As we noted in *Commonwealth* v. *Appleby, supra* at 307 n.5:

> "Of course, the question whether a weapon is dangerous as used is always one for the fact finder. 'In resolving this issue the jury may consider the nature, size, and shape of the object as well as the way in which it is handled or controlled.' *Commonwealth* v. *Tarrant*, [*supra* at 416]. Thus the holding of the present case should not be construed to mean that any intentional unjustified touching with an object previously held in a different case to have been *capable* of being a dangerous weapon constitutes a crime . . . . A reasonable jury might well reach a different conclusion as to a riding crop when used in different circumstances." (Emphasis in original.)

Thus, once the Commonwealth established that the defendant knew that his confederates would use duct tape to subdue the occupants, the jury could permissibly infer from the resulting death that the tape was used as a dangerous weapon. Contrary to the defendant's apparent contention, the Commonwealth was not required to prove that the defendant believed the other intruders would use the tape to harm the occupants. The judge instructed that jury that "[i]t is for you to determine, based on all the facts and circumstances, whether the duct tape, in this instance, qualifies as a dangerous weapon." Accordingly, as applied to these facts and drawing all inferences in the Commonwealth's favor as we must, the judge properly submitted the issue to the jury.

9. *Ineffective assistance of counsel.* The defendant next argues that his trial counsel's failure to request more favorable jury

instructions,[7] or to object to the instructions discussed above constituted ineffective assistance of counsel. However, as we have consistently stated in the past:

> "[I]f a defendant convicted of murder in the first degree is unable to show on his direct appeal that, as to an unpreserved claim of error, there is a substantial likelihood of a miscarriage of justice, he would not prevail by asserting as to the same issue the ineffectiveness of his counsel."

*Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). Therefore, the defendant's counsel was not ineffective in failing to object to the jury instructions.

10. *Duplicative convictions.* In *Commonwealth* v. *Gordon*, 42 Mass. App. Ct. 601, 602 & n.1 (1997), the Commonwealth indicted the defendant on multiple counts of burglary under G. L. c. 266, § 14, each naming a different victim, despite the fact that the counts arose out of a single breaking and entering. The Appeals Court, relying on *Commonwealth* v. *Levia*, 385 Mass. 345, 347 (1982), concluded that the single act of breaking and entering could support only one conviction and dismissed all but one of the counts. *Commonwealth* v. *Gordon*, *supra* at 603-606.

Here, the Commonwealth correctly concedes that were we to follow the rule enunciated in *Commonwealth* v. *Gordon*, *supra*, we must dismiss all but one of the defendant's multiple convictions under G. L. c. 266, § 14. We decline the Commonwealth's invitation to "reconsider" *Commonwealth* v. *Gordon*, *supra*.

Furthermore, we have previously held that, where a defendant is convicted of felony-murder, the underlying felony merges into the murder conviction as a lesser included offense. See, e.g., *Commonwealth* v. *Gunter*, 427 Mass. 259, 275-276 (1998); *Commonwealth* v. *Payne*, 426 Mass. 692, 702 (1998), citing *Commonwealth* v. *Anderson*, 425 Mass. 685, 692 (1997), and *Commonwealth* v. *Raymond*, 424 Mass. 382, 396 (1997). Because our analysis above compels the conclusion that the remaining conviction under G. L. c. 266, § 14, is thus the sole

---

[7]At oral argument and in his initial brief, the defendant was under the mistaken impression that his trial counsel had not requested specific jury instructions. He later supplemented the record to include these instructions. As we have already concluded that this request helped him preserve a successful claim as to the lack of instruction on felony-murder in the second degree, counsel was not ineffective in this regard.

basis of a felony-murder conviction, we vacate the convictions of burglary under G. L. c. 266, § 14.

11. *General Laws c. 278, § 33E, review.* The defendant also urges us to reduce his sentence on the basis of the aggregate effect of his claims of error and on the ground that his sentence (life without possibility of parole) was disproportionately harsh. The defendant asserts that, because death was inadvertent, his knowledge of the duct tape's potential danger was questionable, and where he merely acted as a lookout, the sentence was not "consonant with justice." However, the defendant was present throughout this incident, and accepted a share of the stolen property even after witnessing his companions' mistreatment of the uncle. We, therefore, do not consider the defendant's role in this crime to be a minor one. More importantly, our plenary review of the record indicates that the Commonwealth's case was a strong one and we see no basis for relief under G. L. c. 278, § 33E.

*So ordered.*