DUNCAN, COMMONWEALTH vs., 100 Mass. App. Ct. 635

 
 COMMONWEALTH vs. CHARLES DUNCAN.

100 Mass. App. Ct. 635
 October 4, 2021 - January 21, 2022

Court Below: Superior Court, Suffolk County
Present: Massing, Lemire, & Hand, JJ.

 

Rape. Kidnapping. Robbery. Evidence, Videotape. Practice, Criminal, Duplicative convictions, Instructions to jury.

At the trial of indictments charging the defendant with aggravated rape, G. L. c. 265, § 22 (a); kidnapping, G. L. c. 265, § 26; and unarmed robbery, G. L. c. 265, § 19 (b), the evidence was sufficient for the jury to find that the defendant had committed the crimes, where the victim, having had time to observe the defendant during the incident, identified him with "a hundred percent" certainty in a photographic array; where her description of the defendant's clothing was consistent with his clothing when he entered the ambulance and the clothing found with him at the hospital; where the defendant called 911 from a cell phone with the victim's telephone number; and where a comparison of deoxyribonucleic acid samples taken from the defendant and the victim suggested that the defendant was the likely source of the sperm fractions. [638-640]

At a criminal trial, even assuming that a Superior Court judge was required to give, sua sponte, a specific unanimity instruction that the jurors must agree on which potential aggravating factor - unarmed robbery or kidnapping - they relied as the predicate offense in convicting the defendant of aggravated rape, no substantial risk of a miscarriage of justice arose, where the jury unanimously convicted the defendant of both offenses alleged as aggravating factors to the rape. [640-641]

In the circumstances of convictions of aggravated rape, kidnapping, and unarmed robbery, this court concluded that, where one of the two aggravating offenses - kidnapping or unarmed robbery - was a lesser included offense of aggravated rape, the conviction of the lesser included offense should be vacated; further, where the jury were silent as to the factor that aggravated the rape, this court vacated the kidnapping rather than the unarmed robbery conviction as duplicative of the aggravated rape conviction, given that the Commonwealth is entitled to a verdict on the highest crime charged. [641-643]

INDICTMENTS found and returned in the Superior Court Department on June 14, 2018. 

 The cases were tried before Rosalind H. Miller, J. 

 Brad P. Bennion for the defendant.

 Page 636 

 Shane T. O'Sullivan, Assistant District Attorney, for the Commonwealth.

 HAND, J. Following a jury trial in the Superior Court, the defendant was convicted of aggravated rape, G. L. c. 265, § 22 (a); kidnapping, G. L. c. 265, § 26; and unarmed robbery, G. L. c. 265, § 19 (b). He was sentenced to not less than twelve and not more than fifteen years in prison for aggravated rape, and to three years of probation for kidnapping and three years of probation for unarmed robbery, the terms of probation to be served concurrently and from and after the sentence for aggravated rape.

 The defendant appeals, arguing that the evidence was insufficient to prove that he was the perpetrator, and that the judge erred in failing to instruct the jury, sua sponte, that to convict him of aggravated rape, they were required to agree unanimously on which of the two possible predicate offenses served as the aggravating factor. The defendant also contends that his conviction on whichever aggravating factor the jury relied is duplicative of his conviction of aggravated rape. Because we agree that, in this case, the defendant's conviction on one of the predicate felonies to the aggravated rape was duplicative of his aggravated rape conviction, we vacate the defendant's conviction of kidnapping. In all other respects, we affirm.

 Background. We recite the facts as the jury could have found them. At approximately midnight on May 24, 2018, the victim was walking to her home in the Dorchester section of Boston from the Massachusetts Bay Transportation Authority Shawmut Red Line Station. As the victim turned the corner from Dorchester Avenue to Lonsdale Street, the defendant approached the victim from behind on her right side. The victim felt a hard object against her head, and the defendant physically directed her back down Lonsdale Street. The defendant said he was holding a gun and demanded that the victim give him her cell phone, which she did.

 The defendant led the victim to the back yard of a house on Lonsdale Street and told her to remove her clothes. He then removed his sweatshirt and told the victim to lie down; the victim complied because she "didn't want to get hurt." The defendant, not dissuaded by the victim's telling him that she had her menstrual period, raped the victim. He then told the victim to get dressed, warned her to never walk down that street again, and left without returning the victim's cell phone. The defendant's face had been visible to the victim for approximately ten minutes during the attack and she was able to describe him to the police.

 Page 637 

 The victim immediately went home, woke her roommate, and called the police. She was taken by ambulance to Boston Medical Center where she was examined by a sexual assault nurse examiner; the nurse used swabs to take samples from the victim's genital area, including inside her vagina. The victim told the police that her attacker was a young Black male in his twenties with a chipped tooth and high cheekbones, wearing a white T-shirt. She later identified the defendant from a photographic array with "a hundred percent" certainty.

 Meanwhile, after he left the scene of the crime, the defendant called 911 and reported that he was outside of 55 Florida Street in Dorchester, wearing a white shirt, and experiencing back pain and anxiety. [Note 1] He also said that the cell phone he was using did not belong to him and he did not know the number associated with it. Emergency medical personnel responded and found the defendant "in the vicinity of 55 Florida Street."

 Upon locating the defendant, an emergency medical technician (EMT) noted that the defendant did not appear "to be in any acute distress," although he "looked disheveled," and was wearing a white T-shirt and black sweatpants. After bringing the defendant to Carney Hospital, the same EMT learned that a call had been made alleging a rape perpetrated by a man matching the defendant's description near the area where the EMT had picked up the defendant. [Note 2] The telephone number associated with the incident matched the telephone number used by the defendant to call 911.

 The police responded to the hospital, where they found the defendant asleep in a hospital room. After waking the defendant, who was wearing a white T-shirt and dark shorts, and who had a pair of dark sweatpants on a chair next to him, the police arrested him. Using swabs, the police obtained samples from the defendant's groin and penis. Later, an officer located a red sweatshirt and the victim's cell phone in the area of 55 Florida Street. The parties stipulated to the fact that the police found a latent print of the defendant's left thumb on the victim's cell phone.

 Page 638 

 The samples taken from the defendant's penis tested positive for the presence of blood. Serology screening of the vaginal swabs from the victim disclosed the presence of semen. Sperm fractions were separated out from the sample and from those fractions, a complete deoxyribonucleic acid (DNA) profile was obtained; it was consistent with the sperm's having originated from one person. The police had also obtained samples from the defendant using an oral swab and had a blood swatch from the victim. These samples, too, were used to obtain DNA profiles, and all three profiles were compared against each other. All twenty-four characteristics of the DNA profile obtained from the sperm fractions matched all twenty-four characteristics of the DNA profile obtained directly from the defendant. The Commonwealth's DNA expert opined that, statistically, the combination of DNA characteristics found in both the sperm fragments and in the defendant's known sample "could be expected to be found in approximately one in 300 nonillion[, or one with twenty-nine zeros,] African Americans."

 Discussion. 1. Sufficiency of the evidence. The defendant challenges the sufficiency of the evidence identifying him as the perpetrator. In reviewing a challenge to the sufficiency of the evidence, we "consider the evidence in the light most favorable to the Commonwealth to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Cordle, 412 Mass. 172, 175 (1992). See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). We are satisfied that there was ample evidence from which the jury could have concluded that the defendant was the person who committed the crimes.

 First, having had time to observe the defendant during the incident, the victim identified him with "a hundred percent" certainty in a photographic array. [Note 3] Her description of the defendant's 

 Page 639 

clothing was consistent with the defendant's clothing when he entered the ambulance and the clothing found with him at the hospital. See Commonwealth v. Watkins, 473 Mass. 222, 230 (2015) (consistent clothing descriptions relevant to identification). Video surveillance footage (video) captured the victim walking on Dorchester Street, and, separately, an individual following her path of travel. The video also depicted an individual consistent with both the victim's and EMT's description dressed in clothing similar to that found with the defendant. To the extent that the victim's physical description of her attacker differed from the defendant's appearance at the time he was apprehended (e.g., whether her attacker had a chip in his tooth and facial hair) or that portions of her description were vague (e.g., the absence of a description of the attacker's hair), those variations were for the jury to consider in assessing the credibility of the victim's testimony that she "got a good look at [the] person" who raped her and of her description of that man. See Commonwealth v. Silva-Santiago, 453 Mass. 782, 797 (2009) (jury assigns weight to be given identification evidence, considering circumstances); Commonwealth v. Martin, 447 Mass. 274, 311 (2006) (Cordy, J., dissenting) (credibility of identification and weight to be given identification "uniquely the province of the jury").

 Second, the defendant called 911 from a cell phone with the victim's number and directed the dispatcher to send the ambulance to him on Florida Street, which was in the area where the assault occurred. Later, a red sweatshirt and the victim's cell phone were located in that same area, and the defendant's fingerprint was found on the abandoned cell phone. See Commonwealth v. Lavin, 94 Mass. App. Ct. 353, 359 (2018) (thumbprint on ammunition clip, coupled with description of intruder's build and clothing, where clothing matched that found in bedroom with defendant, sufficient to link defendant to crime).

 Third, a comparison of DNA taken from sperm fractions obtained from a sample collected from the victim's vagina and DNA from cells taken from the defendant's mouth suggested that the defendant was the likely source of the sperm fractions. [Note 4] Additionally, swabs collected from the defendant's penis in the 

 Page 640 

hospital indicated the presence of blood, consistent with the victim's account that she was menstruating at the time of the rape.

 The jury had overwhelming evidence from which they could conclude beyond a reasonable doubt that the defendant was the perpetrator. The judge correctly denied the motion for a required finding.

 2. Jury instructions. In instructing the jury on the elements of aggravated rape, [Note 5] the judge informed the jury that the Commonwealth bore the burden of proving that the rape was committed "during the commission of the crime of either kidnapping or robbery" as she had defined those offenses earlier in her instructions. [Note 6] Although the defendant did not request a specific unanimity instruction requiring the jurors to agree about which potential aggravating factor they relied on in convicting the defendant of aggravated rape, he now contends that the judge erred by failing to instruct the jury on this point sua sponte. Because the defendant did not request the instruction and did not object to its absence, we review error, if any, in the instructions to determine whether it created a substantial risk of a miscarriage of justice.

 Page 641 

 See Commonwealth v. Palermo, 482 Mass. 620, 629 (2019); Commonwealth v. Grandison, 433 Mass. 135, 145 n.19 (2001), quoting Commonwealth v. Comtois, 399 Mass. 668, 676 (1987). We conclude that even assuming that the judge was required to give such an instruction and to do so sua sponte, there was no substantial risk of a miscarriage of justice here, where the jury unanimously convicted the defendant of both offenses alleged as aggravating factors to the rape. See Comtois, supra, quoting Commonwealth v. Lemar, 22 Mass. App. Ct. 170, 173 (1986) ("[i]t does not appear likely that the jury verdict would have been different" had judge, sua sponte, given specific unanimity instruction). See also Commonwealth v. Wadlington, 467 Mass. 192, 208 (2014) (defendant not prejudiced by judge's erroneous failure to give specific unanimity instruction as to felony underlying felony-murder conviction "because the defendant was convicted on separate indictments of armed robbery and armed home invasion, so we know that the jury unanimously found beyond a reasonable doubt that the defendant committed both of these felonies"); Commonwealth v. Cruz, 430 Mass. 182, 193 (1999) ("it is readily apparent that a unanimous jury concluded that the defendant committed each of the . . . charged acts").

 3. Duplicative convictions. The judge sentenced the defendant to not less than twelve and not more than fifteen years in prison for aggravated rape, and to three years of probation for kidnapping and unarmed robbery, to be served concurrently and from and after the sentence for aggravated rape. On appeal, the defendant argues that because one of the two aggravating offenses -- kidnapping or unarmed robbery -- was necessarily a lesser included offense of the aggravated rape conviction, the conviction of the lesser included offense should be vacated. The Commonwealth concedes that the predicate offense, whichever it was, was a lesser included offense, but argues that only the sentence and not the conviction of that offense should be vacated. On the facts of this case, we agree with the defendant that he is entitled to have the conviction (and not just the sentence) of the predicate offense vacated, but conclude that the kidnapping conviction should be vacated, and the unarmed robbery conviction should stand.

 Whichever of the two possible aggravating offenses underpinned the jury's conviction on the aggravated rape charge is a lesser included offense of the aggravated rape. See, e.g., Commonwealth v. Rasmusen, 444 Mass. 657, 666 (2005), quoting Commonwealth v. Gunter, 427 Mass. 259, 276 (1998) ("When a 

 Page 642 

murder conviction is based on a felony-murder theory, the underlying felony, whatever it may be, is always a lesser included offense and the conviction for that felony, in addition to the conviction of murder, is duplicative"). Contrast Commonwealth v. Felder, 455 Mass. 359, 370 (2009) (where murder conviction is based on theories in addition to felony-murder, conviction of underlying felony stands); Commonwealth v. Vick, 454 Mass. 418, 431 (2009), quoting Commonwealth v. Jones, 382 Mass. 387, 393 (1981) ("As long as each offense requires proof of an additional element that the other does not, 'neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not [duplicative]'").

 Here, to avoid offending the prohibition against double jeopardy in the Fifth Amendment to the United States Constitution and at Massachusetts common law, see Commonwealth v. Rollins, 470 Mass. 66, 70 (2014), the defendant's conviction of the lesser included offense must be vacated. See Commonwealth v. Gilbert, 94 Mass. App. Ct. 168, 174-175 (2018), and cases cited. See also Commonwealth v. Donovan, 58 Mass. App. Ct. 631, 632 n.1 (2003) (vacating duplicative kidnapping conviction wholly included in aggravated rape conviction); Commonwealth v. Petrillo, 50 Mass. App. Ct. 104, 110-111 (2000), cert. denied, 532 U.S. 1030 (2001) (same). Contrast Commonwealth v. Wilcox, 72 Mass. App. Ct. 344, 347 (2008) (where jury found three total aggravating factors, aggravated rape conviction not duplicative of kidnapping).

 The question then becomes which of the two predicate offenses may stand. The defendant contends that where the jury were silent as to the factor that aggravated the rape, he is entitled to the benefit of the doubt, and the more serious offense (based on the maximum potential sentence for each crime) of unarmed robbery should be vacated. [Note 7] As he concedes, however, the general rule is that the "Commonwealth is entitled to a verdict on the highest

 Page 643 

crime charged." Commonwealth v. Vao Sok, 435 Mass. 743, 759 (2002). Accordingly, we conclude that the kidnapping conviction should be vacated as duplicative of the conviction of aggravated rape. [Note 8]

 Conclusion. On the indictments charging aggravated rape and unarmed robbery, the judgments are affirmed. On the indictment charging kidnapping, the judgment is vacated, the verdict is set aside, and the indictment is to be dismissed.

So ordered.

FOOTNOTES
[Note 1] From testimony of the Commonwealth's witnesses, a map of the area, and video surveillance footage introduced at trial, the jury could have concluded that the location at which the rape took place was within a few minutes' walk of 55 Florida Street. 

[Note 2] The EMT testified that the individual he accompanied to the hospital was a Black male with a thin build, wearing a white T-shirt, and that the call advising emergency personnel of a rape near 55 Florida Street described the rapist as "a black male, thin build, white T-shirt, red hoodie." 

[Note 3] To the extent the defendant contends that the photographic array identification was "inherently prejudicial" and thus improper because it included a photograph of the defendant with a particular facial expression that was consistent with the victim's statement to the police that the defendant "kind of sucked in [his] lips" when he spoke, we are not persuaded. The victim told the police during the identification that she recognized the photograph of the defendant from his "facial feature[s], cheekbone[s]." She testified at trial that the lips in the photographs were "not . . . the thing [she] zoomed in on" in her identification. See Commonwealth v. Poggi, 53 Mass. App. Ct. 685, 691 (2002) ("it is the totality of the circumstances attending the identification which determines whether the identification procedure is impermissibly suggestive"). 

[Note 4] The defendant's challenge to the DNA testing procedures is speculative and unavailing. The defendant has failed to show that the procedures employed by the laboratory or the corresponding testimony by the technician were in any way error. In any event, in assessing the sufficiency of the evidence, we consider all evidence, "without regard to the propriety of [its] admission." Commonwealth v. Sepheus, 468 Mass. 160, 164 (2014), quoting Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 98 (2010). 

[Note 5] Aggravated rape requires, inter alia, "forced sexual intercourse 'during the commission or attempted commission of' one of the enumerated offenses [in] G. L. c. 265, § 22 (a)[, which include both kidnapping and unarmed robbery, G. L. c. 265, §§ 19 (b), 26]." Commonwealth v. Billingslea, 484 Mass. 606, 630 (2020). 

[Note 6] After correctly instructing the jury on the elements of rape, the judge provided additional instructions on aggravated rape. Specifically, the judge instructed the jurors as follows: 

"Aggravated rape is a more serious offense than rape, and it requires the Commonwealth to prove a third element beyond a reasonable doubt.

"In this case, in order to prove the [d]efendant guilty of aggravated rape the Commonwealth must prove beyond a reasonable doubt that the rape was committed during the commission of the crime of either kidnapping or robbery as I have previously defined them to you.

"It is not necessary that the kidnapping or the robbery be used to facilitate the unlawful sexual intercourse as long as the kidnapping or the robbery constituted one continuous episode and course of conduct.

"Therefore, if after considering all of the evidence you determine that the Commonwealth has proved beyond a reasonable doubt that the [d]efendant raped [the victim] and that the rape was committed during the commission of the crime of either kidnapping or robbery, then you should find the [d]efendant guilty of aggravated rape."

[Note 7] Unarmed robbery carries a maximum sentence of life, see G. L. c. 265, § 19 (b), whereas the maximum sentence for the kidnapping indictment here is ten years. See G. L. c. 265, § 26; Commonwealth v. Rodriguez, 83 Mass. App. Ct. 267, 271 (2013) (concluding that G. L. c. 265, § 26, third par., can reasonably be interpreted to impose twenty-five year minimum sentence only where perpetrator "commit[ted] kidnapping while armed, and either inflict[ed] serious bodily injury or sexually assault[ed] the victim" [quotations omitted]). Although the Commonwealth concedes only that the sentence was improper, it too suggests that it is the unarmed robbery sentence that is at issue. 

[Note 8] Because we do not identify a "significant impact" on the original sentencing scheme caused by vacating one of two concurrent probationary terms of the same duration, we exercise our discretion to vacate without remanding to the trial court. See Commonwealth v. Rivas, 466 Mass. 184, 189, 192 (2013) (appellate court permitted to vacate sentence of lesser included offense without remand, but when "decision as to which convictions to vacate may have a significant impact on the original sentencing scheme," it is proper to remand for judge "to fashion the most appropriate sentence [and] properly vacate either conviction"). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.