## COMMONWEALTH *VS.* CASEY LAUZIER.

No. 99-P-2003.

Hampden. May 14, 2001. - January 22, 2002.

Present: PERRETTA, BECK, & BERRY, JJ.

*Breaking and Entering. Assault by Means of a Dangerous Weapon. Intent. Malicious Injury to Property.*

At a jury-waived trial of an indictment charging breaking and entering a dwelling in the nighttime with intent to commit a felony, there was sufficient evidence to warrant a finding that, at the time of the break-in, the defendant had the specific intent to commit the felonies of assault by means of a dangerous weapon, and wilful and malicious injury or destruction of property. [628-629]

At a jury-waived trial of an indictment charging breaking and entering a dwelling in the nighttime with intent to commit a felony, there was sufficient evidence upon which the judge could rationally and justifiably find that the defendant's intent at the time he broke into his parents' home was not only to commit suicide, but also to commit felonious assaults upon police who responded to the break-in, thus providing the requisite felonious intent necessary for a burglary conviction. [629-631]

On appeal of a conviction of breaking and entering a dwelling in the nighttime with intent to commit a felony, this court did not reach the issue of how — in cases where malicious destruction of property is one of the potential felonies underlying the charged crime — the $250 felony threshold was to be measured, where the argument by the defendant on appeal for limited valuation was not made to the judge at trial, and where all parties were on notice of an expanded valuation measure; further, there was sufficient evidence that the defendant's acts of malicious destruction were both wilful and committed with malice. [631-635]

INDICTMENT found and returned in the Superior Court Department on July 17, 1997.

The case was heard by *Bertha D. Josephson*, J.

*Peter M. Onek*, Committee for Public Counsel Services, for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

BERRY, J. Following a jury-waived trial, the defendant was convicted of breaking and entering a dwelling in the nighttime with intent to commit a felony (G. L. c. 266, § 15).[1] He asserts the conviction should be reversed because there was insufficient evidence that he had the specific intent to commit a felony at the time of the break-in.[2] We affirm.

1. *Background facts.* The defendant broke into the home of his mother and stepfather, Robert Lonis, on May 21, 1997. At the time of this act, the defendant's troubled relationship with his mother and Lonis had degenerated to the point that they had forbidden him from coming to the house and had notified their neighbors to call the police if he appeared. The defendant had prior involvement with the Springfield police department, and he harbored ill will against the police because he believed that members of the police force had falsely accused him of prior criminal conduct.[3] On the evening in question, the defendant's parents were away on vacation. There was a large gun collection in their home. The defendant visited a friend, Christopher Mason, who later that evening dropped him off at a package store. About an hour later, the defendant telephoned and asked Mason to come over to his mother's house. In approaching the house, Mason saw a broken window that looked "like a fist went through it to unlock the door." Upon entering, Mason saw the defendant sitting on the floor surrounded by shotguns and rifles. The wall cabinet that held a gun collection had been broken open. The defendant's hand was injured, and there was a hole in the wall near where he was sitting. The defendant told

---

[1] General Laws c. 266, § 15, provides in pertinent part: "[W]hoever breaks and enters a dwelling house in the night time, with the intent [to commit a felony therein] or, having entered with such intent, breaks such dwelling house in the night time, . . . shall be punished . . . ."

[2] The defendant was sentenced to from four to six years at M.C.I., Cedar Junction, on the breaking and entering conviction, which is the subject of this appeal. He does not appeal from his convictions on six counts of assault by means of a dangerous weapon, possession of a firearm or ammunition without an identification card, discharging a firearm within 500 feet of a dwelling, and malicious destruction of property. On these convictions, he was sentenced to a ten-year term of probation.

[3] The defendant had been convicted of offenses involving assault and battery on police officers. Although he pleaded guilty to the charges and received a jail sentence, the defendant insisted that the police had fabricated the incident.

Mason that he wanted to kill himself. He placed the barrel of a gun in his mouth. Mason left the house, but then heard a gun shot and reentered. The defendant had fired a shot into the ceiling. He was unhurt. He said it was against his religion to kill himself, so he would have the police kill him. The defendant again fired a shot into the ceiling. Fearing for his safety, Mason left the house and went to his nearby home. He continued to hear shots fired and telephoned the defendant to try to persuade him to stop firing the guns. Mason then noticed a cruiser and waved it down to report what was happening.

With the arrival of the police, the defendant barricaded himself inside the house. A nearly twelve-hour stand-off ensued. The defendant fired high-powered rifle shots, which in three volleys were aimed directly at officers stationed in particular locations, and he also discharged guns inside the house. Notwithstanding the assault, the police did not return fire. At one point, the defendant demanded that the officers issue a public apology and admit they had fabricated the earlier assault charges to which the defendant had pleaded guilty. See note 3, *supra*. Ultimately, the next morning, the police discharged tear gas into the house, forcing the defendant out. He emerged with something wrapped around his hand, which the police feared concealed a gun. The defendant ignored police instructions to drop what he was carrying, saluting the officers with an obscene gesture. At that point, an arrest team wearing body armor and carrying protective shields rushed the defendant and arrested him.

2. *The sufficiency of the evidence of intent to commit a felony.* The defendant does not dispute that he broke into and entered the dwelling in the nighttime without permission. He contends, however, that the Commonwealth failed to prove by sufficient evidence that at the time of the breaking and entering, he intended to commit a felony. We review to determine "whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the [fact finder] 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant [here with respect to the element of

intent to commit a felony under G. L. c. 266, § 15] was proved beyond a reasonable doubt.' " *Commonwealth* v. *Chappee*, 397 Mass. 508, 519 (1986), quoting from *Commonwealth* v. *Anderson*, 396 Mass. 306, 311 (1985). See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), *S.C.*, 423 Mass. 129 (1996).[4]

Where, as here, there were separate indictments for the felonies that were potentially also predicates for the breaking and entering indictment, that indictment need not have particularized the specific felony which the defendant is alleged to have intended to commit at the time of the break-in. See *Commonwealth* v. *Cruz*, 430 Mass. 182, 188-189 (1999). Given that, and because the judge did not specify which of the two pertinent felony offenses underlay her guilty finding on the burglary charge, we address the sufficiency of the evidence for both offenses at issue. We conclude that there was sufficient evidence to warrant a finding that, at the time of the break-in, the defendant had the specific intent to commit the felony of assault by means of a dangerous weapon upon the police officers (G. L. c. 265, § 15B), and the felony of wilful and malicious injury or destruction of property (G. L. c. 266, § 127).

3. *Assault by means of a dangerous weapon.* The defendant argues that, at the time of the breaking and entering, his sole intent was to commit suicide, and that any intent to commit the felony of assault upon the police by means of a dangerous weapon was formulated only after the entry and, hence, cannot form the requisite felonious intent necessary for a burglary conviction. The requisite specific intent to commit the underlying felony must exist at the time of the breaking and entering, *Commonwealth* v. *Wygrzywalski*, 362 Mass. 790, 792 (1973); however, that "intent may be inferred from the actual commission of the felonious act, cf. *Commonwealth* v. *Hersey*, 2 Allen 173, 179 (1861), as well as 'from the circumstances attending the act, and from the conduct and declarations of the defendant.' " *Commonwealth* v. *Perron*, 11 Mass. App. Ct. 915,

---

[4]The appellate challenge is to the sufficiency of the evidence at the close of the Commonwealth's case, at which point "the defendant's rights become 'fixed.' " Reporters' Notes to Mass.R.Crim.P. 25, Mass. Ann. Laws, Rules of Criminal Procedure at 1376 (Lexis 2001). See *Commonwealth* v. *Kelly*, 370 Mass. 147, 150 & n.1 (1976); *Commonwealth* v. *Cormier*, 41 Mass. App. Ct. 76, 78 (1996).

917 (1981), quoting from *Commonwealth* v. *Shedd*, 140 Mass. 451, 453 (1886).

We determine that the trial evidence concerning the defendant's intent, viewed in the light most favorable to the Commonwealth, was not singular and limited to a suicide attempt. Rather, the evidence and reasonable inferences drawn therefrom reflect the defendant's plan, prior to the entry, to commit the felony of assault by means of a dangerous weapon against the police, *both* as a potential means of suicide and, independently, as means of revenge against the police. "The defendant may have intended to commit suicide *and at the same time* intended to harm" the police. *Commonwealth* v. *Guisti*, 434 Mass. 245, 248-249 (2001) (emphasis in original).

Evidence of dual intent may be discerned in the trial record as follows. Prior to the break-in, the defendant was aware of the large arsenal in the house. Had the defendant intended merely to take his own life, access to such a large arsenal would have been unnecessary. When Mason entered the house he saw that the defendant had taken not one, but several guns out of the collection and placed them around himself. The defendant then fired shots not calculated to injure himself. We see no reason why the trial judge, sitting as trier of fact, would be logically compelled to accept, as the defendant urges, that he harbored only intent to commit suicide, and was absolutely free of any intent to engage the police with the firepower stockpiled in the house. Moreover, according to the defendant, his religious convictions were antithetical to suicide, so that, as he put it, he would have "the cops shoot at him and have them kill him so he'd go to heaven." The plan to fire at the police to provoke return fire could reasonably be inferred to have been formulated prior to the break-in, because the defendant would have understood that, unless he demonstrated that he was armed and dangerous by displaying and discharging firearms, the police were unlikely to shoot back. Additionally, the defendant's plan to use the weapons to fire at the police — which he, in fact, did — was consistent with blaming the police for some measure of his problems. Evidence of this dual intent was also reflected in the defendant's telephone communications with the police throughout the standoff, in which he stated both that he wanted

to kill himself and that he wanted to kill police officers.[5] Furthermore, the inference that the defendant intended to assault the police was supported by the defendant's subsequent acts.[6] See *Commonwealth* v. *Ronchetti*, 333 Mass. 78, 81-82 (1955), quoting from *Commonwealth* v. *Carter*, 306 Mass. 141, 149 (1940) ("[t]he overt act leaves no room for doubt as to the felonious purpose with which the previous criminal act was perpetrated," where items were later discovered missing from home, fact finder properly could infer that defendant's intent in breaking and entering was to steal, notwithstanding that defendant also assaulted occupant); *Commonwealth* v. *Bibbo*, 50 Mass. App. Ct. 648, 652-653 (2001) (jury properly could infer that defendant intended to stalk victim at time he broke into her home; "inferences drawn by the jury need not be necessary or inescapable, but only reasonable and possible"). So considered, there was sufficient evidence upon which the judge could rationally and justifiably find that the defendant's intent at the time he broke into the home was not only to commit suicide, but was also to commit felonious assaults upon the police.

4. *Malicious injury to, or destruction of, property.* At trial, both the Commonwealth and the defendant proceeded on the basis that the $250 felony threshold under the malicious destruction of property statute, G. L. c. 266, § 127, was to be measured by valuation of the dwelling as a whole. In fact, at the close of

---

[5]The Springfield police established telephone communication with the defendant, and his conversations reflect the dual nature of his intent. Officer Grier, for example, testified, "He had no problem with killing police officers. He told me that he wanted to kill police officers. He also wanted to kill himself. He wanted the police to kill him." "[H]e was quite upset and had serious disdain and distrust of police officers as a result of an incident that occurred to him a few years earlier that resulted in his arrest."

[6]To counter this evidence, the defendant, among other things, cites the incident in which he placed a gun in his mouth in Mason's presence. But, the fact that the defendant presented suicidal tendencies does not mean that he did not also intend to shoot at the officers. In fact, during the standoff, at a point after the defendant had already fired repeatedly at the police, the defendant did the same thing. That is, after the standoff had been ongoing for several hours and just after dawn, the defendant opened the front door and appeared in the doorway for a moment, with a rifle positioned in his mouth. He then went back into the house, and again fired at the officers through the front window.

the Commonwealth's case-in-chief, in arguing a motion for a required finding of not guilty, the defendant's trial counsel acknowledged that the felony threshold element had been met because he was "certain" the value of the house was more than $250.[7] On appeal, however, through a postargument letter, appellate counsel, who was not trial counsel, seeks to present an entirely different position, contending that the measure for valuation is limited to the value of the damaged gun cabinet alone and, then, from this changed vantage, argues that there was insufficient evidence that the gun cabinet was worth over $250.

This newly-fashioned claim is inconsistent with the general trial record, which makes clear that the case was prosecuted and defended on a theory of valuation based on the dwelling as a whole.[8] Moreover, the appellate claim is directly at odds with the theory at trial, as shown by the defendant's motion for a

---

[7]This acknowledgment, which pertained to the malicious destruction of property indictment, would, of course, equally apply to the breaking and entering indictment, with malicious destruction of property as the underlying felony. We note that the defendant was also found guilty of a separate felony charge of malicious destruction of property on an indictment that charged that the value of the injured property exceeded $250, and the defendant has not appealed from that conviction.

[8]In adopting a "total valuation" methodology at trial, it appears that both parties relied on *Commonwealth* v. *Pyburn*, 26 Mass. App. Ct. 967 (1988). In *Pyburn*, the court held that the felony threshold under G. L. c. 266, § 127, was not properly calculated based upon repair bills for fixing a truck. "[I]t is the value of the *'property so destroyed or injured'* that must be found to exceed [two hundred fifty dollars], not the amount of damage to the property that must exceed [that amount]." *Id.* at 969 (emphasis in original). The *Pyburn* court noted, however, that, apart from the repair bills, had the jury been so instructed, the evidence would have warranted a finding that the truck's value was more than the statutory threshold. Thus, *Pyburn* may be read — as both the Commonwealth and the defendant did at trial — to endorse valuation of the truck as a whole, in lieu of valuation limited to the specific parts of the truck that the maliciously destructive acts affected. This reading of total valuation finds further support in *Commonwealth* v. *Walters*, 12 Mass. App. Ct. 389, 392 (1981) (although only vehicle windshield was struck with club as object of malicious destruction, "the jury could have inferred that the truck was worth [the then statutory threshold of] more than one hundred dollars"). See Nolan & Sartorio, Criminal Law § 427 (3d ed. 2001). But see *Commonwealth* v. *Cimino*, 34 Mass. App. Ct. 925, 927-28 (1993) (where injury to property limited to automobile windows shot out by BB gun, felony sentences vacated and vehicle value as whole not considered).

required finding of not guilty and counsel's closing argument.[9]
See *Commonwealth* v. *Campbell*, 51 Mass. App. Ct. 479, 482-
483 (2001). "A party 'is not permitted to raise an issue before
the trial court on a specific ground, and then to present that is-
sue to [the reviewing] court on a different ground.' " *Ibid.*,
quoting from *Commonwealth* v. *Tyree*, 387 Mass. 191, 213
(1982), cert. denied, 459 U.S. 1175 (1983). Given the forego-
ing, "[t]he short answer to this argument [for limited valuation]
is that it was not made to the judge at trial." *Commonwealth* v.
*Gagnon*, 45 Mass. App. Ct. 584, 588 (1998). Therefore, in this
case, we need not reach the issue of whether — in cases where
malicious destruction of property is one of the potential felonies
underlying the crime of breaking and entry a dwelling in the
nighttime — the methodology for valuation of the $250
threshold in G. L. c. 266, § 127, is to be determined by total
valuation of the entire dwelling or is to be determined by the
valuation of only the discrete and segregable parts of the dwell-
ing property that were subject to the malicious destruction.[10]

---

[9]See note 7, *supra*, concerning the acknowledgment in the motion for a
required finding of not guilty. Similarly, in his closing argument, trial counsel
conceded "there's no argument . . . that the house was, in fact, damaged
. . . [by] shots into various walls [and] through the windows and things of
that nature and I would concede that the value of the house must well have
exceeded $250 as required by statute."

[10]We note that, even if the new appellate claim of limited valuation were to
be reviewed as one of non-preserved error, the issue would not pose a
substantial risk of a miscarriage of justice. This is so because — even assum-
ing that the methodology of valuation were to be based on valuation of the
discrete and separate parts of the dwelling that were damaged — valuation
would not, as the defendant argues, be limited to just the gun cabinet. Instead,
the defendant's malicious acts of destruction would encompass, and the valu-
ation would include, in addition to the gun cabinet, the damaged back door,
the ceiling and walls into which the shots were fired, the wall punched in with
his hand, and the windows broken by smashing guns against them. See *Com-
monwealth* v. *Hosman*, 257 Mass. 379, 385-386 (1926) (in determining valua-
tion of property, fact finder may apply her "common experience"). Thus,
whether determined by either valuation methodology — valuation of the full
dwelling or valuation of the aggregated discrete parts of the dwelling — there
was no substantial risk of a miscarriage of justice in the determination of the
felony statutory threshold of $250. A closer question might have been
presented had the damage been limited to a freestanding and segregable part
of the dwelling, in which case, a more limited valuation might have been in
order, requiring proof of valuation of just that part of the dwelling. Here,

The defendant further contends that, in light of the recent decision of *Commonwealth* v. *Beale*, 434 Mass. 1024, 1025 (2001), "the value of the property must be treated as an element of the felony of malicious destruction of property, G. L. c. 266, § 127, and that a value in excess of $250 must be found by a jury beyond a reasonable doubt." *Ibid.* But *Beale* does not advance the defendant's challenge to his conviction. As the court observed in *Beale*, the constitutional inquiry is "not a formalistic examination of whether a [$250 dollar threshold] finding is labeled an 'element' or a 'sentencing factor.' " *Ibid.* As in *Beale*, "[t]here was nothing amiss in this case in the procedure by which the defendant's conviction was obtained." *Ibid.* Particularly is this so where all parties were on notice that valuation of the dwelling as a whole was being applied with respect to the malicious destruction underlying the burglary charge, and the defendant fully accepted that valuation measure.

Lastly, the defendant contends that there was insufficient evidence that he had both the wilful and malicious state of mind required under G. L. c. 266, § 127. We disagree. "Wilfulness requires a showing that the defendant intended both the conduct and its harmful consequences; wilful conduct is intentional and by design in contrast to that which is thoughtless or accidental. Malice requires a showing that the defendant's conduct was motivated by cruelty, hostility or revenge." *Commonwealth* v. *Armand*, 411 Mass. 167, 170 (1991) (internal citations and quotations omitted). See generally *Commonwealth* v. *Redmond*, *ante* 1, 3-5 (2001). There was sufficient evidence that the defendant's acts of malicious destruction in the house were both wilful and committed with malice. The defendant's directed plan to break into the dwelling at a time when he knew his parents were away in order to wreak injury therein evinces wilfulness. Malice is manifest in the defendant's expressed anger and hostility at being left without a home and exacting

---

however, aggregating the parts of the dwelling that were damaged not only tips over the threshold, but lends support to the logic of valuation of the dwelling as a whole because of the range of the damage spread across various areas of the dwelling, including the back door, walls, ceiling and windows throughout.

revenge for this banishment by his mother and stepfather by destroying property in their home.

*Judgment affirmed.*