## COMMONWEALTH vs. CARL HILL.

No. 00-P-1741.

Middlesex. May 6, 2002. - January 29, 2003.

Present: BROWN, PERRETTA, & MILLS, JJ.

*Breaking and Entering. Search and Seizure,* Consent. *Practice, Criminal,* Required finding, Instructions to jury.

The evidence at a hearing on a motion to suppress evidence supported the judge's finding that the defendant freely and voluntarily gave police officers his consent to enter his apartment, thereby justifying the officers' warrantless entry, where there was no evidence that the officers were coercive or used trickery or deceit; where the defendant appeared to be cooperative; where the defendant's age, intelligence, and prior police experience justified the inference that the defendant was aware of his rights; and where there was no evidence that the defendant objected in any fashion during his encounter with the officers. [241-245]

At the trial of indictments alleging breaking and entering a vehicle in the nighttime with the intent to commit a felony, in violation of G. L. c. 266, § 16, the evidence was sufficient, upon proper instruction, to warrant the jury finding that the defendant had intended, at the time he broke into and entered two vehicles, to steal property from each of a value in excess of $250; it was not necessary for the Commonwealth to present evidence of the value of the property actually stolen, or, in fact, that any property was actually stolen. [245-247]

At the trial of indictments alleging that the defendant broke into and entered two vehicles in the nighttime with the intent to commit a felony, in violation of G. L. c. 266, § 16, the judge erred in instructing the jury that they were obliged to find the defendant guilty of the greater offense of breaking and entering with intent to commit a felony, even if they found no more than an intent to commit a misdemeanor with respect to either vehicle. [247-249]

INDICTMENTS found and returned in the Superior Court Department on May 13, 1999.

A pretrial motion to suppress evidence was heard by *Charles T. Spurlock*, J., and the cases were tried before *Charles M. Grabau*, J.

*Brownlow M. Speer*, Committee for Public Counsel Services, for the defendant.

*Edward C. Dorsey*, Assistant District Attorney, for the Commonwealth.

MILLS, J. The defendant appeals from convictions on two counts of breaking and entering a vehicle in the nighttime with the intent to commit a felony, G. L. c. 266, § 16; possession of burglarious tools, G. L. c. 266, § 49; and receiving stolen goods with a value less than $250, G. L. c. 266, § 60.[1] On appeal, he claims that (1) the evidence was legally insufficient as to the breaking and entering counts, (2) his motion to suppress was improperly denied, (3) the judge erred in his instructions to the jury, and (4) he received ineffective assistance of counsel. We affirm in part and reverse in part.

1. *Motion to suppress.* Unfortunately, the motion judge did not follow the recommended practice and made no express written findings of fact. We summarize the evidence presented at the suppression hearing in order to determine whether the findings implicit in the judge's ruling are supported by the record. *Commonwealth* v. *Grandison*, 433 Mass. 135, 137 (2001). The judge's denial of the defendant's motion to suppress implies resolution of disputed factual issues in favor of the Commonwealth. *Ibid.*

The sole witness at the suppression hearing was Officer Jack Crowley of the Cambridge police department. On March 17, 1999, he investigated two automobile break-ins that occurred in the early morning hours. In the vicinity of the break-ins, the police recovered a bag containing burglarious tools, two keys, and a forty-ounce bottle of malt liquor. Crowley examined the contents of the bag, identified the name of the company that had made one of the keys, and was eventually directed to a particular apartment at 207 Norfolk Street in Boston.

Crowley and Officer Edward Frammartino, in plain clothes, proceeded to that address and spoke with some "maintenance people" outside the apartment complex. They explained to the officers that "somebody who claimed to be the resident of the apartment came home carrying a lot of items claiming to have lost his keys the night before." An apartment manager let that

---

[1]The defendant was acquitted of two counts of receiving stolen goods. Two other counts of receiving stolen goods were placed on file, and habitual offender and subsequent offense indictments were nol prossed.

person into the apartment at approximately 7:00 A.M. Sometime between 10:00 A.M. and 11:00 A.M., the two officers and the manager approached the apartment and knocked. The defendant, clothed only in his underwear, opened the door, and the manager identified him as the person he let into the apartment earlier that morning. Crowley then identified himself and Frammartino as police officers, and Crowley displayed his badge. The defendant stated, "I know who you guys are," then "stepped aside" and allowed the conversation to continue inside the apartment. When the officers inquired about the defendant's lost keys, he stated that he did not live there and that his brother had lost his keys when his car was broken into.

While in the apartment, the officers observed several bottles of wine stacked underneath a coffee table and a "bunch of car stereos" with wires hanging out of them. As their conversation concluded and the police turned to leave, Crowley noticed a pair of gloves in a trash bag next to the door. Duct tape was wrapped around each of the fingers of the gloves. Once outside, they contacted police headquarters and requested a criminal records check on the defendant, which disclosed twelve aliases and over 125 entries on his probation record, including breaking and entering in the nighttime as the most recent entry.

At that point, they decided to return to the apartment for a second time, this time unaccompanied, and again knocked on the door. Once again, the defendant opened the door, "stood aside," and the officers walked into the apartment. This time, the defendant asked the officers "why [they] wanted to speak to him . . . [and] why [they] were there." The officers told the defendant that they were investigating a crime, read him Miranda warnings, and asked him to get dressed and return with them to the police station. The defendant was told that he was not under arrest, and he agreed to go to the police station.

Before they left the apartment, Crowley observed a bicycle lock and asked the defendant's permission to insert the second key recovered from the site of the vehicle break-ins into the lock. The defendant consented and the key fit. Once they arrived at the police station, the defendant was again advised of his Miranda rights and executed a Miranda waiver form. When asked about his whereabouts on the previous night, the

defendant explained that while he was on his way to his girlfriend's house, he had fallen asleep on the train and someone had stolen his bag. The defendant was then moved into another room and his Miranda rights were explained to him for a third time. The defendant disclosed that he had been going to Cambridge "to steal some bikes" but the area was "hot," meaning that police were close by; he had observed other people breaking into cars at that location. At this point, Crowley informed the defendant that the gloves and wine bottles observed in the apartment matched items that had been reported stolen from the vehicles. The defendant attempted to explain that he found those particular items on the road and that although he "knew they were stolen" and "shouldn't have taken them," he took them anyway. Subsequently, the police asked the defendant for his consent to search the apartment at 207 Norfolk Street. He "agreed to sign the form," signed it, and was placed under arrest shortly thereafter. The officers and the defendant returned and entered the apartment, finding the bottles of wine, the gloves, and other items from the burglarized vehicles.

Prior to trial, the defendant's motion to suppress all the evidence was denied. The motion judge concluded that the Commonwealth had "met its burden of proving that the search of the [defendant's apartment] was a result of the consent of the [defendant] which was unfettered by coercion expressed or implied and was more than mere acquiescence to a claim of lawful authority. [*Commonwealth* v. *Sanna,*] 424 Mass. 92, 97 (1997)." The defendant now argues that the second warrantless entry was unlawful and that, moreover, defense counsel's failure to assert in a pretrial motion to suppress that this second entry was an unconstitutional intrusion was a lapse depriving the defendant of effective assistance of counsel. We disagree on both points.

In the absence of exigent circumstances or consent, warrantless searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Voisine*, 414 Mass. 772, 783 (1993). When police seek to justify a warrantless entry on the basis of consent, the Commonwealth must

show " 'consent unfettered by coercion, express or implied, and also something more than mere "acquiescence to a claim of lawful authority." ' " *Commonwealth* v. *Voisine, supra,* quoting *Commonwealth* v. *Walker,* 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976). The voluntariness of an individual's consent to a warrantless entry is an issue of fact, and must be examined in the circumstances of the case." *Commonwealth* v. *Sanna,* 424 Mass. at 97.

In this case, the judge's finding that the defendant freely and voluntarily gave the officers his consent to enter his apartment is supported by the evidence. When the officers arrived at the defendant's doorstep for the second time and knocked, the defendant knew who they were, asked them what they wanted, and freely stepped aside, allowing them to enter the apartment to continue their conversation. See *Commonwealth* v. *Voisine,* 414 Mass. at 783 (consent valid when the form of communication was pointing in the direction of a bedroom, rather than speaking). There was no evidence that the officers were coercive or used trickery or deceit. See *Commonwealth* v. *Burgess,* 434 Mass. 307, 310 (2001). Furthermore, the defendant appeared to be cooperative, *ibid.,* consented to the officers' first entry, voluntarily accompanied them to the police station, waived Miranda rights, and, finally, signed a consent form allowing the officers to enter the apartment for a third time. The judge may also consider the defendant's age, intelligence, and prior police experience as relevant factors regarding voluntary consent. See *Commonwealth* v. *Perrot,* 407 Mass. 539, 543 (1990) (defendant had at least ten prior encounters with the police); *Commonwealth* v. *Burgess, supra* at 310 (judge took into account the defendant's age, eighteen, and level of education, eighth grade). Contrast *Commonwealth* v. *Heath,* 12 Mass. App. Ct. 677, 684 (1981) (young female defendant with no prior arrest record). The defendant in this case had more than 125 entries on his probation record, and from this, the motion judge could reasonably infer that the defendant was aware of his rights. See *Commonwealth* v. *Perrot, supra* at 543. Finally, there was no evidence that the defendant objected in any fashion during the entire episode, from the first police knock to the final entry with his express consent. See *Commonwealth* v. *Maloney,* 399 Mass.

785, 786-788 (1987). In these circumstances, we conclude that the motion judge correctly found that the defendant's behavior manifested implied voluntary consent.[2]

2. *Denial of motion for required finding of not guilty.* The defendant next argues that the trial judge erroneously denied his motion for a required finding of not guilty because the Commonwealth failed to provide sufficient evidence to prove that the defendant had intended to commit a felony when he broke into the two vehicles. We examine the facts at trial in the light most favorable to the Commonwealth. The Commonwealth's principal witness was Officer Crowley, who testified substantially as he had in the suppression hearing. Margaret Prebensen, the owner of a Toyota Camry automobile that had been broken into that night; Cheryl Bagshaw, the girlfriend and roommate of the owner of a Ford Explorer sport utility vehicle that had also been broken into that night; and three other officers testified regarding the two vehicle break-ins. The testimony of these witnesses may be summarized as follows:

On March 16, 1999, around 7:00 P.M., Prebensen returned to her home located in Cambridge and parked her Camry in her driveway. On March 17, 1999, at approximately 1:30 to 2:00 A.M., she was awakened by her mother and noticed that her car's rear passenger seat window was shattered. As she was looking down at her vehicle from her living room window, she noticed a man with a flashlight looking into the back seat of the vehicle. She then told her mother to call 911, opened the window, and screamed for the police. After the police arrived, Prebensen examined the contents of her vehicle and found that her briefcase was missing from the back seat. Prebensen described her briefcase and its contents as follows:

"[I]t's a black leather case. . . . All of my papers were — not all of them. There were still some papers in the

---

[2]The defendant argues that defense counsel was ineffective because he "failed to specify in either the motion to suppress or the supporting memorandum the fact that there was a second entry . . . into the apartment." Because we conclude that the defendant voluntarily consented to the officers' second entry, we also conclude that defense counsel's behavior did not fall below the standard set forth in *Commonwealth v. Saferian,* 366 Mass. 89, 96 (1974).

briefcase; but most of the contents of the brief — briefcase were — was on the ground. My Day Runner, and all of the reports, and file folders that were in my briefcase."

During his investigation at the scene, Officer David Albert found two bags — a black leather briefcase and a black Adidas bag — approximately two houses away from Prebensen's.[3] Albert described the briefcase and its contents as follows:

"[O]ne was a black leather briefcase . . . . The briefcase was opened, papers sticking out of it; there were other — there were other papers strewn on the ground around it and on the stairs. . . . I looked into [the briefcase], you know, to see if there was anything of value, other than the papers. You know, it just appeared to be a briefcase with, you know, someone's work papers in it."

Prebensen later identified the briefcase as hers.

On March 17, 1999, Cheryl Bagshaw and her boyfriend, Curt Cetrulo, were both awakened by a police officer speaking on a megaphone, saying, "Whoever owns the green [Ford] Explorer . . . come outside." Both Bagshaw and Cetrulo went outside of their apartment located in Cambridge and found that Cetrulo's vehicle had been broken into. They noticed that the "back seat passenger side window was completely smashed in and things were stolen out of the car." According to Bagshaw's testimony, a duffle bag, a prescription bottle, old ski gloves, and several bottles of wine were taken from the car. There was no specific testimony as to the value of the missing items.[4]

At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty on all of the indictments, and the judge denied the motion. The criteria for reviewing a motion for a required finding of not guilty are familiar, viz., whether the government has presented sufficient evidence for a reasonable fact finder to infer the existence of each element of the offense charged. See *Commonwealth* v. *Mandile*,

---

[3]The black Adidas bag was identified as the defendant's bag that he claimed had been stolen while he slept on the train.

[4]Although there was testimony describing other property in the area of the two break-ins, there was no testimony identifying that additional property as having been taken from either car.

403 Mass. 93, 94 (1988). See also *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

We conclude that there was sufficient evidence here from which a reasonable jury could have found, upon proper instruction, that the defendant had intended, at the time he broke into and entered the vehicle, to steal property from each of a value in excess of $250. Although the value of any item actually taken may be relevant on intent, especially if the item actually taken was visible at the time of the breaking and entering, it was not necessary for the Commonwealth to present evidence of the value of the property actually stolen, or, in fact, that any property was actually stolen. A defendant's intent to commit a felonious larceny may be proved in a number of ways. See *Commonwealth* v. *Lauzier*, 53 Mass. App. Ct. 626, 629 (2002) ("[the] intent may be inferred from the actual commission of the felonious act . . . as well as 'from the circumstances attending the act' " [citations omitted]). The evidence in this case, upon proper instruction, was sufficient to prove the felony portion of G. L. c. 266, § 16.

3. *Jury instructions.* The defendant was indicted on two counts of breaking and entering a vehicle in the nighttime with the intent to commit a felony.[5] The four elements of G. L. c. 266, § 16, that the Commonwealth must prove beyond a reasonable doubt are (1) that the defendant broke into a vehicle belonging to another person; (2) that the defendant entered that vehicle; (3) *that the defendant did so with the intent to commit a felony in that vehicle*; and (4) that this event took place during the nighttime.

The Commonwealth argues that it is not required to prove that the defendant possessed the intent to steal property worth more than $250 and that proof of intent to commit any larceny of property, regardless of value, will suffice. We disagree. For his part, the defendant argues that specific evidence of value of the property removed from the vehicle is essential to the Com-

---

[5]General Laws c. 266, § 16, provides in pertinent part: "Whoever, in the nighttime, breaks and enters a building, ship, vessel or vehicle, with the intent to commit a felony . . . shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than two and one-half years."

monwealth's proof and that, for the felony offense, the value must be in excess of $250. We again disagree. Nonetheless, there is a problem with the jury instructions here. The judge charged, in part, as follows:

> "The Commonwealth is not required to prove that the defendant intended any particular felony in this case, but it must prove that the defendant intended to commit some felony. If you conclude beyond a reasonable doubt that the defendant intended to commit *larceny or stealing after* entering the vehicle, I instruct you as a matter of law that *larceny* would be a felony."

There was no objection to this instruction, but we conclude that it misstated the law of larceny. Under the judge's instruction, the jury were *obliged* to find the defendant guilty of the greater offense of breaking and entering "with intent to commit a felony," even if they found no more than an intent to commit a misdemeanor with respect to either vehicle. "There was no objection at trial, but when the claim of error pertains to the definition given to the jury of the crime charged, the possibility of a substantial risk of a miscarriage of justice is inherent." *Commonwealth* v. *Hall*, 48 Mass. App. Ct. 727, 730 (2000).

The distinction between felony and misdemeanor offenses is established by statute: crimes punishable by confinement in a State prison are felonies; all other crimes are misdemeanors. G. L. c. 274, § 1. The Legislature has included that distinction in the general larceny statute, G. L. c. 266, § 30, and has done so by explicitly referencing the value of the property stolen. If the value of the property stolen exceeds $250, the offender can be punished by imprisonment in the State prison; if the value of the property stolen does not exceed $250, the offender's potential imprisonment is in a jail. The Legislature has included both misdemeanor and felony behavior within the general larceny statute; thus, not all larcenous behavior is felonious. The value of the property stolen determines whether larcenous behavior constitutes a felony or a misdemeanor. The "intent to commit a felony" is a specific element within G. L. c. 266, § 16. The Commonwealth must prove the specific intent with which the defendant committed the breaking and entering. *Commonwealth* v. *Perron*, 11 Mass. App. Ct. 915, 916 (1981). That

intent must exist at the time of the breaking and entering. *Commonwealth* v. *Lauzier*, 53 Mass. App. Ct. at 629. Moreover, all criminal statutes are to be strictly construed, and any reasonable doubt as to the statute's meaning must be resolved in the defendant's favor. *Commonwealth* v. *Smith*, 431 Mass. 417, 425 n.10 (2000).

The judge in his jury instructions considered *any* larceny to constitute the felony element of G. L. c. 266, § 16. This was error. Under G. L. c. 266, § 30, a larceny is not a felony unless the value of the property stolen exceeds $250.

The jury should have been instructed that the Commonwealth has the burden of proving that the defendant, at the time of the breaking and entering, intended to steal property of a value in excess of $250. This is an essential element of the offense, to be found by a jury beyond a reasonable doubt. Compare *Commonwealth* v. *Beale*, 434 Mass. 1024, 1024-1025 (2001), citing *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000).[6]

In light of the foregoing, the judgment on the counts charging breaking and entering with the intent to commit a felony are vacated. In light of the fact that the Commonwealth presented ample evidence at trial to withstand a motion for a required finding of not guilty on the offense of breaking and entering a vehicle in the nighttime with intent to commit a felony, the case is remanded for re-sentencing on the lesser included offense unless the Commonwealth elects to retry the case on the more serious offense with the benefit of the court's clarification of the proper jury instruction. See *Commonwealth* v. *Mills*, 436 Mass. 387, 399 (2002). The other judgments are affirmed.

*So ordered.*

---

[6]The judge should also have instructed the jury that if they believed (as they evidently did) that the defendant had entered the vehicle with an intent to steal, they were not required to conclude that he had intended to limit his theft to property under $250 in value. *Commonwealth* v. *Lewis*, 346 Mass. 373, 378 (1963), cert. denied, 376 U.S. 933 (1964). See *Commonwealth* v. *Willard*, 53 Mass. App. Ct. 650, 655 n.7 (2002).