NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-870                                            Appeals Court


COMMONWEALTH  vs.  MATTHEW R. ROCHELEAU.


No. 14-P-870.

Bristol.     September 8, 2016. - November 9, 2016.

Present:  Green, Wolohojian, & Massing, JJ.


Breaking and Entering.  Destruction of Property.  Practice,
    Criminal, Security measures, Fair trial, New trial,
    Harmless error, Instructions to jury, Assistance of
    counsel, Required finding.  Constitutional Law, Fair trial,
    Harmless error.  Due Process of Law, Fair trial.  Fair
    Trial.  Error, Harmless.  Evidence, Impeachment of
    credibility.  Witness, Impeachment.




    Complaint received and sworn to in the New Bedford Division
of the District Court Department on May 23, 2013.

    The case was tried before Joseph I. Macy, J., and a motion
for a new trial was heard by him.


    David M. Osborne for the defendant.
    David B. Mark, Assistant District Attorney, for the
Commonwealth.


    GREEN, J.  Over objection, the defendant was ordered to

remain shackled in ankle restraints throughout his trial on

charges of breaking and entering in the daytime with intent to

commit a felony, assault and battery, and wanton destruction of property over $250, and to remain seated as jurors entered and left the courtroom (apparently to prevent jurors from observing his shackles). On appeal, as he argued in a posttrial motion for new trial denied by the trial judge, the defendant contends that the shackling denied his rights to due process and the presumption of innocence. We conclude that any error was harmless beyond a reasonable doubt, and discern in the defendant's other claims of error no cause to disturb the judgments.[1]

Background. On May 22, 2013, at around 12:30 in the afternoon, the defendant, Matthew Rocheleau, broke into the victim's home. The victim, a sixty-two year old woman, was sleeping on a couch when she was awakened by a "thump" and heard her dog yelp. The victim went to her kitchen, where she found the defendant standing next to her stove, having entered through a closed but unlocked door. Frightened, the victim grabbed a knife and confronted the defendant, asking him, "What are you doing here?" The defendant did not respond, and left the house.

---

[1] In addition to his claim based on shackling, the defendant claims error in the jury instructions administered by the trial judge, and that his trial counsel was constitutionally ineffective. He also contends that the evidence was insufficient to establish that the loss caused by his destruction of property exceeded $250, and that the trial judge improperly impeded his counsel's effort to impeach the victim.

The victim called 911 after the defendant went outside; as she did so, she watched the defendant try to escape through her backyard gate, which was secured by a padlock. The defendant was unable to open or climb over the gate and began to "throw himself into" the fence (which was made of a combination of hardwood and vinyl), eventually breaking his way through the fence. A police officer who responded to the scene testified that he estimated the value of the defendant's destruction of "a whole section of vinyl fence" to be in excess of $250. The victim then followed the defendant out to her driveway where she saw him "fiddling" with her car, and confronted him again.[2] In response, the defendant pushed the victim against the car. Seeing a neighbor pass by, the victim called to him for help. The defendant then pushed her again, and knocked her down into the street.

Hearing the victim's call for help, the neighbor came to her assistance; he stood in front of the defendant, telling him, "Hey, look, guy. You ain't going nowheres till the police show up." Shortly thereafter, as the defendant attempted to

---

[2] The victim described the encounter as follows during her testimony on direct examination:

"And I said, 'what are you doing?'"

"And he said -- he said, 'I've lost my keys.'"

"I said, 'That's my car. What were you doing in my house?'"

walk away, another neighbor came to assist. The defendant continued to walk away until he and the two neighbors ran into some sanitation workers. The defendant finally capitulated and went back to the victim's house until the police arrived. The defendant was subsequently taken into custody by the police. At that time, the victim reported to the police that she was missing a twenty dollar bill.

A few days later, an investigator for the Bristol district attorney took a statement from one of the two neighbors, who said that the defendant appeared "high" at the time of the incident. At trial, that neighbor testified that the defendant was acting nervous and mumbling at the time of the encounter. However, the police officer who responded to the victim's 911 telephone call and arrested the defendant testified that the defendant's speech seemed normal and he seemed balanced.

We provide additional factual detail as needed in our discussion of the defendant's several claims.

Discussion. Shackles. Prior to empanelment, the trial judge explained to defense counsel that his usual practice is to remove handcuffs from criminal defendants during trial, but to leave on the ankle restraints.[3] He explained that he would not require the defendant to stand when jurors entered the court

---

[3] The restraints consisted of metal shackles connected by a metal chain approximately one foot long.

room, and in that manner prevent jurors from seeing that the defendant was restrained. The defendant's counsel objected, and the judge "noted her objection." Following his conviction, the defendant again raised the use of shackles during trial in a motion for a new trial. In denying the motion, the judge observed that:

> "The defendant is a large individual charged with crimes of a violent nature, including assault and battery. He was in custody indicating a need for security. The court house is essentially a single story building in which all court rooms are located on the ground floor. The court room in which he was to be tried was secure in its front, where the judge's bench is located, and along its two sides, one side being a solid wall and the other containing the jury box. However, the rear of the court room where the public sits has swinging, nonlocking doors [that] open directly into a small lobby and then into the outside parking lot. The ease of escape is noticeably present, as is the need to be able to contain and control a potentially difficult prisoner."

In Deck v. Missouri, 544 U.S. 622, 629 (2005), the United States Supreme Court held that "the Fifth and Fourteenth Amendments [to the United States Constitution] prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a [S]tate interest specific to a particular trial." Although a judge has discretion to order shackling for court room security, resort to such a measure must be "case specific

. . . reflect[ing] particular concerns . . . related to the defendant on trial," and appropriate "findings" must be placed on the record at the time shackling is ordered.  Id. at 633.

Massachusetts law likewise has long restricted the practice of shackling.  For a "[f]air trial by an impartial jury, . . . [s]hackling and other unusual security measures are of course to be avoided if possible.  These displays tend to create prejudice in the minds of the jury by suggesting that a defendant is a bad and dangerous person whose guilt may be virtually assumed."  Commonwealth v. Brown, 364 Mass. 471, 475-476 (1973).  Before a defendant may be tried in shackles, a judge should "state [the] reasons . . . in the presence of counsel and defendant . . . and provide an opportunity for counsel to make their objections known," thereby making a record.  Id. at 479.  See Mass.R.Crim.P. 45(a) (if trial judge determines that shackling is "reasonably necessary to maintain order . . . he shall enter into the record of the case the reasons therefor").

In the present case, the judge made no particularized findings on the record at the time he imposed his shackling order, and the record contains no indication that the defendant threatened violence, behaved in a threatening or disruptive

manner, or otherwise posed an evident risk of flight.[4]  Nor do the concerns cited by the judge in his order denying the defendant's motion for a new trial reflect a particularized concern:  the configuration of the court room (with an unlocked door at its rear) hardly sets it apart from others in the Commonwealth, and many defendants are both large and in custody at the time of their trial.[5]  In short, the record does not justify the use of shackles to restrain the defendant in the present case.

The Commonwealth nonetheless contends that no relief is warranted, for two independent reasons.  First, it observes, the motion judge (who was also the trial judge) found that the shackles were not visible to the jury during either empanelment or the trial.  Second, it contends that even if the shackles were visible, any error in their use was harmless beyond a reasonable doubt in light of the strength of the evidence against the defendant.[6]  We agree with the latter, and accordingly need not address the defendant's contention (based

_____

[4] Indeed, we note that the defendant was persuaded without force by the victim and two of her neighbors to remain in place pending arrival of the police after the victim called 911.

[5] The trial judge has since retired.

[6] Because the claim of error was preserved by objection at trial, the burden is on the Commonwealth to establish the "absence of prejudice beyond a reasonable doubt."  Commonwealth v. Bresnahan, 462 Mass. 761, 767 (2012).

on photographs of the court room layout) that the judge's finding that the shackles were not visible to jurors is clearly erroneous.

At trial, the sole element contested by the defendant on the charge of breaking and entering with intent to commit a felony was his criminal intent.[7] As to that element, the defendant pursued a theory that he could not form the requisite criminal intent by reason of mental impairment.[8] In support of that theory, the defendant requested, but was denied, an instruction permitting the jury to consider whether the defendant was so intoxicated by drugs or alcohol that he was incapable of forming the specific intent to commit a felony. On appeal, the defendant does not challenge the denial of the requested instruction, implicitly (and correctly) recognizing that the evidence at trial furnished no basis to support it.[9]

---

[7] At the outset of her closing argument, defense counsel conceded that the evidence established that the defendant entered the victim's home and then ran through the fence in an attempt to leave the victim's property; indeed, no other view of the evidence at trial was possible.

[8] We discuss below the defendant's claim that trial counsel was ineffective by reason of her unsuccessful efforts to develop evidence that the defendant was intoxicated.

[9] The only evidence even hinting at possible impairment or intoxication was testimony that he was "fiddling" with the victim's car, mumbling, "sweating," and "appeared confused." The arresting officer testified that his speech seemed normal, and that he was balanced on his feet. The prosecutor's objection to the defendant's attempt to elicit from one of the

During her closing, counsel for the defendant attempted to argue that the defendant lacked the ability to form criminal intent, but the prosecutor's objection to that argument was sustained (a ruling the defendant likewise does not challenge on appeal).

Because the evidence of guilt (much of which was uncontested) was overwhelming, and because there was scant evidence to support the sole theory on which the defendant sought to defend the charges against him, we are satisfied that any error in the order to keep the defendant in ankle shackles during trial "did not have an effect on the jury and did not contribute to the jury's verdicts."  Commonwealth v. Tyree, 455 Mass. 676, 701 (2010).[10]

Jury instruction.  The defendant also claims error in the jury instruction administered by the trial judge on the charge of breaking and entering in the daytime with intent to commit a felony.  Specifically, the trial judge instructed the jury that "[l]arceny is a felony.  The Commonwealth must prove that the

victim's neighbors that the defendant "seemed like he was high on something" was sustained.

[10] The defendant defended the charge of wanton destruction of property with a value over $250 on essentially the same theory -- that he could not form the requisite criminal intent due to mental impairment.  Though, as discussed below, he also moved for a required finding that the evidence was insufficient to establish that the cost of the damage he caused to the victim's fence was greater than $250, any prejudice caused by his shackles did not bear on the jury's assessment of the cost of the damage he caused.

defendant intended to commit a felony, a larceny, at the time he broke and entered into the building."  As the defendant correctly observes, not all larcenies are felonies.[11]  The defendant did not object to the instruction at trial; we accordingly consider whether there was error and, if so, whether it created a substantial risk of a miscarriage of justice.  In the circumstances, we conclude it did not.

Though not all larcenies are felonies, "larceny in a building is a felony regardless of the value of the items stolen."  Commonwealth v. Cruz, 430 Mass. 182, 188 (1999).  In much the same way as in Cruz, the evidence in the present case established that the defendant's intent at the time of the breaking and entering was larceny in a building.  In the circumstances, the judge's statement that the Commonwealth must prove that the defendant intended to commit a larceny at the time he entered the building, though perhaps imprecise, was not erroneous.  Accordingly, no substantial risk of a miscarriage of justice arose by reason of the judge's instruction.  See ibid.[12]

---

[11] Ordinarily, under G. L. c. 266, § 30, whether a larceny constitutes a felony depends on the value of the property stolen; only if the value of the property exceeds $250 is the crime a felony.

[12] The defendant's reliance on Commonwealth v. Hill, 57 Mass. App. Ct. 240 (2003), is unavailing.  In that case, the defendant was charged with breaking and entering a vehicle in the nighttime with intent to commit a felony.  See id. at 247.  Because it is possible to commit a misdemeanor larceny upon

Other issues.  We discern no abuse of discretion in the motion judge's order denying the defendant's motion for a new trial, which was based on a claim of ineffective assistance of counsel.[13]  The defendant contends that his trial counsel failed adequately to develop evidence that the defendant did not have any stolen property in his possession at the time of his arrest.  However, trial counsel asked the arresting officer whether the officer observed any stolen property in the vicinity of the defendant or on his person, and received "no" as the response.  In any event, the defendant's conviction rested on the obvious inference that he intended to steal property when he broke and entered the victim's home.  Whether he in fact stole any property after he entered, but before the victim discovered him in her kitchen, is irrelevant as to intent.  We likewise find no constitutionally ineffective assistance in trial counsel's failure to preserve objection to the trial judge's ruling excluding testimony of a neighbor that the defendant "seemed like he was high on something."  See note 9, supra.  While lay opinion on the question whether someone is intoxicated by

_____

entry into a vehicle, it was error for the trial judge in Hill to instruct the jury that any larceny after entering the vehicle would constitute a felony.  See id. at 248-249.

[13] Because the motion judge was also the trial judge, we extend "special deference" to his action on the motion. Commonwealth v. Grace, 397 Mass. 303, 307 (1986).

alcohol is generally admissible because the effects of alcohol intoxication are widely known, see Commonwealth v. Canty, 466 Mass. 535, 540 (2013), we are aware of no authority for the proposition that a lay witness may offer an opinion that a person is "high" on something other than alcohol.  Moreover, the defendant presented no evidence at the hearing on his motion for a new trial suggesting that trial counsel could have laid a foundation to support the admission of such an opinion.

There is likewise no merit to the defendant's contention that the evidence was insufficient to establish that the damage to the victim's fence exceeded $250.  At trial, one of the officers who responded to the 911 call testified that he estimated that the damage to the section of the fence destroyed by the defendant was over $250.

Finally, the defendant claims error in a ruling by the trial judge that he claims limited his opportunity to impeach the victim's testimony.  At trial, the victim testified that she observed the defendant "fiddling with [her] car" and that, when she asked him what he was doing, he responded, "I've lost my keys."  In response, the victim said, "That's my car."  Defense counsel then sought to impeach the victim with a statement she had made in an earlier proceeding that the defendant contends

was inconsistent with her trial testimony.[14]  In that statement, the victim said, "I got to my driveway.  And he was trying to get into my car.  I said, 'It's not your car.  Just wait.  The police are on their way.'"  The trial judge expressed skepticism that the prior statement was inconsistent with the victim's trial testimony, but allowed its admission, subject to possible redirect examination concerning the context in which the victim made the statement.  Concerned that the redirect examination might include the fact that the victim made the statement incident to an aborted attempt by the defendant to enter a guilty plea, the defendant chose not to pursue this line of impeachment.[15]  Like the trial judge, we are skeptical that the

---

[14] The victim had given a victim impact statement during a proceeding at which the defendant pleaded guilty, but then withdrew his plea when the proposed sentence was unsatisfactory to him.

[15] The trial judge explained:

"For example, the jury is entitled to know that this was a statement not under oath.  The jury is entitled to know it's a statement not as a result of a hearing subject to cross-examination, but the context in which she is testifying at a sentencing hearing.

"So, I mean, you've got to . . . get it in somewhere.  And she's got to be able to say when she made that statement. And if you don't ask her, she's entitled to."

The judge concluded the sidebar discussion with the following comment:

"And [the trial prosecutor] also can -- and I'll note your objection to this -- ask the context in which those

prior statement was inconsistent with the victim's trial testimony.  In any event, we discern no prejudice from the omission of the prior statement.  The defendant contends that the prior statement would have supported his claim that he was mentally impaired at the time of the incident and, therefore, lacked the capacity to form the requisite criminal intent, because it would illustrate that the defendant was so confused he did not realize the car he was trying to get into was not his.  However, the same inference is plainly supported by the victim's trial testimony, in which she saw the defendant trying to enter her car and told him that the car was hers.  In any event, it would have been a straightforward matter for trial counsel to draw out that suggestion through further questioning of the victim in cross-examination, without reliance on her prior victim impact statement, but trial counsel made no attempt to do so.  Moreover, the statement, even if admitted, would have added little weight to the defendant's unsuccessful effort to develop evidence warranting instruction on mental impairment.

_Judgments affirmed_.

_Order denying motion for new trial affirmed_.

---

statements were made.  And if the woman -- who seems to be a fairly responsive witness -- says, Yeah, I remember that. I was in court when your guy [pleaded] guilty, and then he changed his mind -- I'm going to let that stand."