After a jury trial, the defendant was convicted of assault and battery on a correction officer. On appeal, he claims that he was deprived of a fair trial with an impartial jury because the judge ruled that he was to remain handcuffed and his legs shackled during his trial, and that it was unfair to similarly restrain a defense witness. In addition, he claims that witnesses' use of the term "assault" to describe the incident created a substantial risk of a miscarriage of justice. We affirm.
The occurrence that gave rise to the charge took place in the Plymouth County house of correction where the defendant was awaiting trial on a charge of murder in the first degree.[2] When a fight erupted between the defendant and other inmates, Officer Joseph Murphy responded and tried to separate the combatants. During the altercation, the defendant kicked Murphy on his right inner thigh and threw a punch that grazed his head. The security video in the house of correction captured the episode and the recording was played for the jury.
1. The order for restraint. The defendant claims that it was error for him to have been restrained at trial. We disagree. "A trial judge has the power and a corresponding responsibility to control the proceedings, the conduct of participants, the actions of officers of the court and the environment of the court, which is absolutely necessary for a court to function effectively and do its job of administering justice. Judicial authority in this regard includes the power to take all appropriate measures to prevent escape, to minimize danger of harm to those attending trial as well as to the general public, and to maintain decent order in the court room. In exercising these powers, the judge may consider her own observations, reports from other judges, and recommendations of court officers and others who may have responsibility for the custody of prisoners and general court security. When it is necessary to employ unusual security measures ... the judge must balance the need for special restraints with considerations of maintenance of impartiality and proper decorum and make appropriate findings.[3 ] The burden is on a defendant to show that the judge's decision in the matter was wrong, and an appellate court, acknowledging that the judge has a range of discretion, will not reverse his decision and vacate a conviction unless he is shown to have been arbitrary or unreasonable." Commonwealth v. Scionti, 81 Mass. App. Ct. 266, 276 (2012) (citations, footnote, and quotation omitted).
Here, at the outset of the trial, the chief court officer discussed his concerns regarding the defendant with the judge at a sidebar conference attended by the parties, but not recorded.[4] After the conference, the judge ruled that the defendant would be handcuffed and his legs shackled during the trial and noted the defendant's objection. She stated she was doing so because of information provided by the chief court officer that there were not a sufficient number of court officers available to address their security concerns, that the defendant was presently incarcerated as the result of a murder in the first degree conviction, and because of "the nature of this charge, being assault and battery, alleged, on a [correctional] officer."
To mitigate any prejudice that might occur if the jury saw the defendant walking into or out of the courtroom with restraints, the judge directed that he be seated in the courtroom before the jury entered and that he remain seated until the jury left. In addition, she instructed the jury both before trial began and in her final charge that restraints were part of normal security protocols and that they have "absolutely no bearing on the defendant's innocence or guilt." The defendant objected.
In these circumstances, the judge's imposition of restraints was neither arbitrary nor unreasonable. The judge based her decision on information that additional court officers were not available for assignment to her courtroom. Also, she relied on the nature of the current charge, a charge "bespeaking a reckless and hopeless rebellion against authority." Commonwealth v. Brown, 364 Mass. 471, 476 (1973). She further considered that the defendant was serving a life sentence for murder, reinforcing concerns regarding the defendant's violent nature and adding the reality that another infraction would not, practically speaking, increase his sentence.[5]
Even if we were to conclude otherwise, we agree with the Commonwealth that because there was overwhelming evidence of the defendant's guilt, including a video recording of the crime, any error in ordering restraints would not have influenced the jury or contributed to the guilty verdict. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 476-477. See also Commonwealth v. Rocheleau, 90 Mass. App. Ct. 634, 638 (2016) (any error in ordering defendant in visible shackles harmless in light of strength of Commonwealth's case).
The defendant also argues that his witness, Derrick Waller, should not have been similarly restrained. See Brown, supra at 478-479 & n.16 (outlining same considerations and protocols for restraining witness as are applicable when restraining defendant). Because Waller, who was also serving a life sentence for murder in the first degree, was involved in the fight and there were no additional court officers available during his testimony, the judge imposed the same restraints as she had on the defendant and stated she was doing so for the same reasons. This was not an abuse of her discretion.
2. Use of the term "assault." The defendant also claims that Murphy's and other witnesses' use of the term assault, without objection, to describe the blows landed by the defendant on another inmate during the altercation constituted an impermissible opinion of guilt. All of the references, however, were to the fight between the inmates and not the defendant's blows directed at Murphy. Whether the defendant had assaulted other inmates or had been involved in that incident was not at issue in this case. The challenged testimony regarding whether the defendant assaulted other inmates was only tangentially relevant and did not constitute an improper opinion on the defendant's guilt. See generally Commonwealth v. Canty, 466 Mass. 535, 542-544 (2013).
Judgment affirmed.

By the time of trial in this case, the defendant had been convicted of murder in the first degree.

See Mass.R.Crim.P. 45(a), 378 Mass. 921 (1979) (if trial judge determines that shackling is "reasonably necessary to maintain order ... he shall enter into the record of the case the reasons therefor").

According to the transcript, that sidebar conference was "indiscernible."

Contrary to the defendant's additional contention on appeal, the risk of flight or escape is not a mandatory factor, and the judge was not obliged to explicitly address that factor before ordering restraints. Rather, flight is but one factor among many that may be properly considered by a judge in determining what special security measures are appropriate. See generally Brown, supra at 479 & n.18 (list of factors described as "nonexhaustive" and set out in disjunctive). See also Commonwealth v. DeVasto, 7 Mass. App. Ct. 363, 366 (1979) (because defendant charged with attempted escape, his flight risk was significant factor about which judge should have made findings). Moreover, merely because flight was not specifically mentioned by the judge does not mean it was not a component of the judge's reasoning when she noted the nature of the current charge and his conviction for murder in the first degree. The current charge plainly suggested that the defendant was willing to engage in violent behavior and when combined with a sentence that provided little or no hope of being released, it would not have been unreasonable to infer that the defendant posed a flight risk.